ALFRED VAIL MUTUAL ASSOCIATION AND THE TOWN-
SHIP OF SHREWSBURY, PLAINTIFFS-RESPONDENTS,
v. BOROUGH OF NEW SHREWSBURY, DEFENDANT-AP-
PELLANT.

Argued October 14, 1970—Decided March 8, 1971.

Mr. *Milton A. Mausner* argued the cause for appellant (*Messrs. Reussille, Cornwell, Mausner & Carotenuto,* attorneys).

Mr. *William Himelman* argued the cause for respondents (*Messrs. Klatsky, Himelman & Siegfried,* attorneys).

The opinion of the Court was delivered by

Schettino, J. We are here concerned with the validity of the current method of apportioning regional school costs between the constituent municipalities of the Tinton Falls Regional Elementary School District, the Township of Shrewsbury [hereinafter the Township] and the Borough of New Shrewsbury [hereinafter the Borough].

Due to the fact that the Borough of Eatontown School District and the Tinton Falls Regional Elementary School District together comprise the Monmouth Regional High School District, these municipalities divide the latter's proportionate share of the regional high school costs as well as the operating costs for the regional elementary school district.

Prior to the passage of *L.* 1965, *c.* 175, the operating expenses for the common school district were historically apportionable between these two municipalities on the basis of their respective assessed valuations. Under the assessed valuation formula, the Borough, since the ratio of enrolled

pupils to assessed valuations was substantially lower in the Borough than in the Township, apparently bore a disproportionately high share of these regional school costs when viewed with respect to the allocable cost per pupil.[1]

Pursuant to the provisions of *L.* 1965, *c.* 175, which mandated that school costs be apportioned in certain school districts "upon the basis of the number of pupils enrolled therefrom on the last day of September of the current school year in the same manner as would apply if said municipalities comprised separate constituent school districts," these municipalities now apportion regional school costs by a per pupil formula. Although *L.* 1965, *c.* 175 does not appear in the recent revision of the education statutes, the apportionment scheme it prescribed continues to be binding on the Tinton Falls Regional Elementary School District by virtue of the enactment of *N. J. S. A.* 18A:13–23.[2]

On December 18, 1967, plaintiffs, the Township and the Alfred Vail Mutual Association (the Township's largest tax-

---

[1]According to information supplied to us by the Borough which depicts the proportionate share of the cost of the education of each child borne by each of the two municipalities under both the assessed valuation method of apportioning school costs and the per pupil formula, it appears that when the assessed valuation basis was being used the Borough paid more than four times as much as the Township for the education of each child attending the Tinton Falls Regional Elementary School District and the Monmouth Regional High School District.

|  | Approximate Cost Per Student | | | |
|---|---|---|---|---|
|  | Assessed Valuation Basis | | Per Pupil Formula | |
|  | Monmouth Regional | Tinton Falls Elementary | Monmouth Regional | Tinton Falls Elementary |
| New Shrewsbury | $833 | $307 | $790 | $289 |
| Shrewsbury | 207 | 70 | 790 | 289 |

[2]In effect freezing the status of apportionment legislation existing at the time of the 1968 revision, *N. J. S. A.* 18A:13–23 provides:

\* \* \* \* \* \* \* \*

In regional districts in which apportionment on the basis of the number of pupils enrolled on the last school day of September of the current school year is in effect, such apportionment shall be made upon said basis.

*N. J. S. A.* 18A:13–23(a).

payer), instituted this action seeking a declaratory judgment that regional school costs for the Tinton Falls Regional Elementary School District should be apportioned on the basis of assessed valuations rather than under the per pupil formula prescribed by L. 1965, c. 175. Since the Township's school support obligation under the assessed valuation formula would have been substantially lower than under the per pupil formula which has been used for all apportionments of regional school costs made since January 1, 1966, plaintiffs also sought readjustment in favor of the Township for payments already made under the per pupil formula.

In challenging the validity of the per pupil method for apportioning regional school costs prescribed by L. 1965, c. 175, plaintiffs admitted that the statute was applicable to the Tinton Falls Regional Elementary School District.[3] Plaintiffs, however, argued that the statute was violative of state constitutional provisions prohibiting special legislation

[3] By narrowly defining the class of school districts covered by the statute, the Legislature restricted the scope of L. 1965, c. 175's mandatory provisions to those school districts exhibiting the following historical characteristics. First, at some point in its history, the school district must have been a consolidated school district comprised of exactly two municipalities. Second, after January 1, 1957, the school district, while it was still a consolidated district comprised of exactly two municipalities, must have joined in the formation of a regional high school district. Third, by subsequently regionalizing the consolidated school district for all other school purposes, the school district must have ceased to operate as a consolidated school district, continuing instead as a regional school district.

Prior to the passage of L. 1950, c. 133, the Township encompassed all the territory presently divided between the Township and the Borough. L. 1950, c. 133, however, created the Borough of New Shrewsbury, carving its territorial boundaries out of the land occupied by the originally larger Township. Despite the separation, the Borough and the Township, the smaller remnant, continued to operate a single school district, the Shrewsbury Township School District, which was a consolidated school district comprised of exactly two municipalities.

On November 27, 1957, the Shrewsbury Township School District joined with the Borough of Eatontown School District to form the Monmouth Regional High School District, a regional school for high school purposes. Pursuant to the terms of the regionalization

on the ground that it was impermissibly designed solely for the purpose of benefiting the Borough.

The trial court found for the Borough. On appeal, the Appellate Division reversed, holding that *L.* 1965, *c.* 175 constituted special legislation providing for the management and control of free public schools and regulating the internal affairs of municipalities prohibited by *N. J. Const.,* Art. IV, § VII, ¶ 9(7) and (13). *Vail Mut. Assoc. v. Halpin, Speaker of House,* 107 *N. J. Super.* 517 (App. Div. 1969). The Appellate Division, however, allowed the Township to recapture only those excess amounts contributed from the date the action was commenced, beginning with the school year 1968–69, declining to allow any recoupment for the interim school years 1966–67 and 1967–68. *Vail Mut. Assoc. v. Halpin, Speaker of House, supra.* Since the case presented a substantial State constitutional question, the Borough appealed to this Court as of right. *R.* 2:2–1(a).

---

plan, these two school districts were to apportion the operating costs for the regional high school district on a per pupil basis; yet, as between the Township and the Borough, the Shrewsbury Township School District's proportionate share of the school costs for the regional high school district would be apportioned, as were all other common school expenses, on the basis of their respective assessed valuations. The Shrewsbury Township School District, however, continued to function as a consolidated school district for all other school purposes.

Subsequently, in 1962, pursuant to the provisions of *L.* 1953, *c.* 90, the Board of Education of the Shrewsbury Township School District submitted to its electorate a plan to regionalize the school district for the purpose of qualifying for larger State aid. According to the provisions of the regionalization plan, regional school costs would continue to be apportioned between the Township and the Borough under the assessed valuation formula. After the voters of the two municipalities approved the regionalization plan, the Tinton Falls Regional Elementary School District was created.

Thus, after reviewing the history of the Tinton Falls Regional Elementary School District, we find that it was a consolidated district composed of exactly two municipalities which initially joined in the formation of a regional high school district and thereafter formed a regional school district for all other school purposes in the manner described by *L.* 1965, *c.* 175. Accordingly, we have no doubt that the mandate of *L.* 1965, *c.* 175 was applicable thereto.

We perceive the issue to be whether *L. 1965, c. 175* constitutes special legislation.

In enacting a statute of ostensible general application, the Legislature stated that the per pupil formula specified by *L. 1965, c. 175* must be used:

[w]henever any school district which was comprised of [two] municipalities has, since January 1, 1957, joined in the formation of a regional district for high school purposes and thereafter joined in the formation of another regional district for all other school purposes * * *.  *L. 1965, c. 175.*

Although *L. 1965, c. 175* thus purports to be general in character encompassing all school districts meeting the stated criteria, it was actually tailored to meet the exigencies of the Tinton Falls Regional Elementary School District, that being the only school district which precisely meets all of the criteria of the statutory classification.[4]

---

[4]From statistical materials prepared by the New Jersey Department of Education, we have been able to determine that, at both the time when *L. 1965, c. 175* was enacted and presently, there is only one school district in New Jersey which precisely meets the qualifications of the statutory class denominated by that statute.

When *L. 1965, c. 175* was enacted, there had been 23 consolidated school districts in New Jersey comprised of two or more municipalities; yet, there were only 21 consolidated school districts comprised of exactly two municipalities as required by the statute. 15 *N. J. Dept. of Ed., Comm. Annual Rpt.: Financial Statistics of School Districts*, 598 (1966). Of these 21 school districts, only 12 joined in the formation of a regional high school district after January 1, 1957; three school districts comprised of two municipalities, however, had formed a regional high school prior to that date. *N. J. Dept. of Ed., Div. of Curriculum and Instruction, Regional School Districts in New Jersey* (1965). Of the 12 school districts composed of two municipalities which formed regional high school districts after January 1, 1957, eight formed a regional district for all school purposes at the same time as the regional high school districts, thus exempting themselves from coverage under *L. 1965, c. 175. N. J. Dept. of Ed., Div. of Curriculum and Instruction, Regional School Districts in New Jersey* (1965). Only one school district composed of two municipalities formed a regional high school district after January 1, 1957, and *thereafter* formed a regional elementary school

After reviewing the background materials describing the statute's inception, we have no doubt that it was enacted solely to relieve the Borough from what apparently was a disproportionate burden of the school costs *vis-a-vis* the Township in the Tinton Falls Regional Elementary School District when viewed with respect to the actual per pupil cost. In this respect, *L.* 1965, *c.* 175 represented the apparently successful culmination of a long campaign by the Borough to correct a situation which from its viewpoint was obviously inequitable.[5]

district for all school purposes: The Tinton Falls Regional Elementary School District. *N. J. Dept. of Ed., Div. of Curriculum and Instruction, Regional School Districts in New Jersey* (1965). Nine other school districts comprised of two municipalities had an opportunity to bring themselves within the provisions of *L.* 1965, *c.* 175, three by simply forming regional elementary school districts; but, none of these districts did so before the passage of *N. J. S. A.* 18A:13-23, which effectively limited *L.* 1965, *c.* 175's per pupil formula mandate to existing members of the class.

[5]In 1950 when these municipalities decided to continue to operate as a single school district, *L.* 1931, *c.* 275 required that their respective school cost obligations be determined on the basis of assessed valuations. Under the provisions of *R. S.* 18:5-2, possible inequities occasioned by this formula could be avoided by simply splitting the district into two separate school systems each coterminous with a municipality. *R. S.* 18:5-2 made this a comparatively simple procedure, requiring only that a majority of the voters of one of such municipalities determine that the municipality should be constituted a separate school district without any necessity for administrative approval by the State Department of Education.

The Borough, however, did not invoke this statute; its inaction was possibly due to the existence of federal subsidies which eliminated any disparity in the per pupil cost of education between the two municipalities. For the most part, the Township's assessed ratables consisted of two federally owned tax exempt properties, the Alfred Vail Homes and the Crawford Street Apartments. In lieu of taxes, the federal government paid certain moneys to the Shrewsbury Township School District, computed on a per pupil basis, representing the cost of educating each child housed on federal property. Since its population consisted principally of the residents of these developments, the Township's contribution for school costs was approximately 100% of the per pupil cost of educating each child from the Township. Consequently, as long as federal subsidies continued, there was no

■■ We emphasize, however, that these findings are not determinative of the question whether *L*. 1965, *c*. 175 constitutes special legislation. The Legislature is necessarily accorded broad discretion in the area of permissible classification. *Passaic v. Consolidated Police, etc. Pension Fund Commission,* 18 *N. J.* 137 (1955); *State v. Guida,* 119 *N. J. L.* 464 (E. & A. 1938). We have no doubt that that school districts having characteristics so nearly alike as to require similar treatment in legislation may be grouped together in classes. The classification, however, must be germane to the purpose of the enactment, resting on characteris-

---

incentive for the Borough to attempt to split the consolidated school district.

In 1957 the United States government, however, disposed of all its property holdings in the Township, selling the Alfred Vail Homes to the Alfred Vail Mutual Association and the Crawford Street Apartments to the Township. Since the *raison d'etre* for the federal funds was extinguished by these transactions, there was, consequently, an imminent threat that federal school subsidies would be discontinued.

Faced with the prospect of a substantial increase in its local tax burden due to these transactions, the Borough attempted to split the Shrewsbury Township School District. Although *L*. 1953, *c*. 417, which superceded *R. S.* 18:5-2, permits the breakup of a school district originally coterminous with one municipality where that municipality is subsequently subdivided into two corporate entities, the municipality attempting to split the district must initially secure the approval of a statutory board of review which includes the State Commissioner of Education before it will be allowed to submit the issue to its electorate. In the instant case, this statutory board of review refused the Borough permission to submit to its voters the question whether the Borough should be constituted a separate school district, basing its decision principally on the ground that the Township was too small to maintain an independent school system. Shortly thereafter, on July 1, 1958, federal school subsidies for Township students were completely discontinued, thus imposing a heavier per student support obligation on the Borough.

Thus rebuffed in its efforts to split the district, the Borough turned to the Legislature for relief. Apparently as a result of its efforts, *Assembly Bill* 741, later *L*. 1965, *c*. 175, was adopted by the Legislature. On October 7, 1965, after a series of conferences conducted at the direction of the Governor involving representatives of the New Jersey State Education Department and the parties, the Governor approved the measure, enacting it into law.

tics that substantially differentiate the school district included from those school districts excluded from the coverage of the statute. *See, e. g., Roe v. Kervick,* 42 *N. J.* 191 (1964); *Cooper v. Springer,* 65 *N. J. L.* 594 (E. & A. 1901); *State ex rel. Richards v. Hammer,* 42 *N. J. L.* 435 (Sup. Ct. 1880), *aff'd,* 44 *N. J. L.* 667 (E. & A. 1882).

In *Harvey v. Essex County Board of Freeholders,* 30 *N. J.* 381, 389 (1959), we stated the reviewing standard as follows:

In deciding whether an act is general or special, it is what is excluded that is the determining factor and not what is included. If no one is excluded who should be encompassed, the law is general. Another requirement of a general law is that it must affect equally all of a group who, bearing in mind the purposes of the legislation, are distinguished by characteristics sufficiently marked and important to make them a class by themselves.

Thus, the issue is ultimately whether the classification imposed by the statute is reasonable, embracing all school districts which should properly be included within its scope when viewed with respect to the legislative objective. *Roe v. Kervick, supra; In re Loch Arbour,* 25 *N. J.* 258 (1957); *In re Freygang,* 46 *N. J. Super.* 14 (App. Div.), *aff'd per curiam,* 25 *N. J.* 357 (1957); *Koons v. Atlantic City,* 134 *N. J. L.* 329 (Sup. Ct. 1946), *aff'd o.b.,* 135 *N. J. L.* 204 (E. & A. 1947); *Budd v. Hancock,* 66 *N. J. L.* 133 (Sup. Ct. 1901).

Defendant claims that *L.* 1965, *c.* 175 was obviously intended to rectify the apparent inequity of apportioning regional school costs on the basis of assessed valuations where one municipality has a disproportionately low ratio of pupils to assessed valuations by substituting the cost per pupil formula. The classification criteria, therefore, should be geared to include within the cost per pupil mandate all those school districts in which the per pupil formula for apportioning school costs would be more appropriate than the assessed valuation basis.

██ In dealing with certain legislative subjects the classification criteria of *L.* 1965, *c.* 175, a school district comprised

of exactly two municipalities forming first a regional high school district and next a regional elementary school district, might be appropriate. These criteria, however, simply do not indicate why the mandatory cost per pupil formula would promote. an equitable sharing of regional school costs only in the class of school districts defined by the act. Noting this point, the Appellate Division perceptively stated:

[There is no] reason why mandated employment of the cost-per-pupil basis is not as appropriate to regional districts formed prior to January 1, 1957 as to those formed subsequently * * *; or as appropriate to districts comprised of more than two municipalities as to those consisting of only two; or as appropriate in cases where the high school district was formed subsequent to the formation of the regional district for all other purposes as where the high school district was formed first; or, indeed, as appropriate where the school district has not entered into a regional high school district but only a regional elementary school district, or *vice versa*.

*Vail Mut. Assoc. v. Halpin, Speaker of House, supra*, 107 *N. J. Super.* at 532–533. Clearly, a classification based merely on the historical temporal order of regionalization and the chance that the school district is comprised of exactly two municipalities rather than two or more governmental units has no rational relationship to the purpose of the statute which is to equalize the financial burden on constituent members of regional school districts. *Cf. Riccio v. Hoboken*, 69 *N. J. L.* 649 (E. & A. 1903) ; *Howe v. Board of Education*, 72 *N. J. L.* 158 (Sup. Ct. 1905). The act in question thus arbitrarily excludes from the per pupil apportionment mandate comparable regional school districts which may have the same qualities and situation, namely, a disproportionate sharing of regional school expenses between the constituent municipalities when viewed with respect to the actual per pupil cost of education.

Thus, finding the criteria which exclude every school district but the Tinton Falls Regional Elementary School District from the scope of *L.* 1965, *c.* 175 arbitrary, lacking a reasonable nexus to the objects of the statute, we hold that

*L.* 1965, *c.* 175 constitutes special legislation rather than a general enactment.

Pursuant to the provisions of our Constitution, all special, local or private legislation must be preceded by public notice, *N. J. Const.,* Art. IV, § VII, ¶ 8, in accordance with procedures established by the implementing statutes, *N. J. S. A.* 1:6–1 *et seq.*

Since *L.* 1965, *c.* 175 was concededly not adopted as a special law following public notice of intention to apply for the enactment thereof as required by the Constitution, the act contravenes *N. J. Const.,* Art. IV, § VII, ¶ 8 and is void for that reason. *In re Loch Arbour, supra; Sherwood v. Bergen-Hackensack, etc., Authority,* 24 *N. J. Misc.* 48 (Sup. Ct. 1946), *aff'd,* 135 *N. J. L.* 304 (E. & A. 1947); *In re Miller,* 122 *N. J. L.* 176 (Sup. Ct. 1939).

Since we take the view that the absence of public notice preceding the statute's enactment of itself renders the act invalid, we affirm the decision of the Appellate Division solely on this basis, finding it unnecessary to express any opinion concerning the appellate court's separate finding that *L.* 1965, *c.* 175 pertained to two enumerated subjects with respect to which special legislation is restrained, the management and control of free public schools, *N. J. Const.,* Art. IV, § VII, ¶ 9(7), and the regulation of the internal affairs of municipialities, *N. J. Const.,* Art. IV, § VII, ¶ 9(13).[6]

---

[6]In the concluding portion of its opinion in the instant case, the Appellate Division suggested that the Legislature could relieve the Borough from an inequitable burden in the distribution of school costs only by a general enactment "absent proper recourse to the exception provided by *N. J. Const.,* Art. IV, § VII, par. 10." *Vail Mut. Assoc. v. Halpin, Speaker of House, supra,* 107 *N. J. Super.* at 533.

Although *N. J. Const.,* Art. IV, § VII, ¶ 10 does provide an exception to the constitutional prohibition against special legislation regulating the internal affairs of a municipality when the special statute is enacted pursuant to the petition of the concerned municipality's governing body and it is subsequently approved by such municipality

We also need not here decide the comparable question whether *L.* 1965, *c.* 175 may constitute a species of special legislation within *N. J. Const.,* Art. IV, § VII, ¶ 9, even though hypothetically the public notice provisions of *N. J. Const.,* Art. IV, § VII, ¶ 8 were met and the statute does not fit any of the enumerated categories of interdicted special legislation set forth in *N. J. Const.,* Art. IV, § VII, ¶ 9(1) to (13).

In addition to absolutely prohibiting special legislation which deals with any of the 13 enumerated subjects, *N. J. Const.,* Art. IV, § VII, ¶ 9 concludes by stating that general laws rather than special, local or private acts must be passed by the Legislature *"for all other cases which, in its judgment, may be provided for by general laws."* [The "mandatory clause."]

Since the main thrust of the opinion below, the parties' briefs, and oral argument were directed to the scope of these enumerated constitutional prohibitions against special legislation rather than to a searching inquiry concerning the possible effect of the "mandatory clause" above quoted as an independent restriction on legislative power in this area, we expressly reserve decision concerning whether this "mandatory clause" may interdict a species of special, local or private legislation which does not fit any of the enumerated categories set forth in *N. J. Const.,* Art. IV, § VII, ¶ 9 but nonetheless results in unfounded discrimination by unreasonably excluding members of a class similarly situated to those embraced in the act until the issue is properly presented in a formal argument.

---

by ordinance or referendum, we expressly reserve decision whether assuming *arguendo* that the only substantive objection to *L.* 1965, *c.* 175 is that it regulates the internal affairs of these two municipalities the Borough could properly invoke this petition procedure by itself to secure a reenactment of *L.* 1965, *c.* 175 when the subject matter of the statute deals with a situation of common interest to two municipalities redounding substantially to the economic benefit of the petitioning municipality and to the financial detriment of the non-petitioning municipality.

We note, however, that our own limited research concerning the "mandatory clause" has revealed a suggestion in a few New Jersey cases that this language may constitute an independent check on legislative arbitrariness in the passage of special, local or private laws in matters not specifically prohibited by *N. J. Const.,* Art. IV, § VII, ¶ 9, though the operative effect of this constitutional restriction is by no means made clear. *State v. Guida, supra; State v. Price,* 71 *N. J. L.* 249 (Sup. Ct. 1904) ; *Van Cleve v. Passaic Valley Sewerage Com'rs,* 71 *N. J. L.* 183 (Sup. Ct. 1904), *rev'd on other grounds,* 71 *N. J. L.* 574 (E. & A. 1905).[7]

Since the apportionment of regional school expenses on a per pupil basis was improperly done under an unconstitutional statute, it is clear that because of this action the Township has been assessed more than its share of moneys for the support of the school system and, correspondingly, the Borough has been assessed less than its proportionate

---

[7]Although in addition to the prohibition of special, local or private laws in certain enumerated matters many other state constitutions also provide in substance that no such law may be passed in any other case where a general law can be made applicable, *see generally,* 2 *Sutherland, Statutory Construction,* 10–13 (3d ed. 1943), there apparently are conflicting views concerning the substantive effect of this language with respect to whether it imposes any *real* restriction on legislative power.

In construing their own "mandatory clauses," many courts treat this language as an enforceable constitutional restriction against the passage of any special, local or private law except where the situation on its facts legitimately requires special treatment thus prohibiting any arbitrary legislative discrimination between members of a proper class. *See, e. g., State ex rel. Anderson v. Hodgson,* 183 *Kan.* 272, 326 *P.* 2d 752 (1958) ; *Jack v. State,* 183 *Okl.* 375, 82 *P.* 2d 1033 (1938) ; *Heckler v. Conter,* 206 *Ind.* 376, 187 *N. E.* 878 (1933) ; *City of Springfield v. Smith,* 322 *Mo.* 1129, 19 *S. W.* 2d 1 (1929) ; *Woodall v. Darst,* 71 *W. Va.* 350, 77 *S. E.* 264 (1912).

In other jurisdictions, however, the courts treat the language as merely cautionary to the legislature rather than an enforceable prohibition against special, local or private legislation in cases not falling within any of the specifically enumerated prohibitions holding the legislative determination that a general law could not be made applicable is not reviewable by the judiciary. *See, e. g., City of Prescott*

share *for the school years commencing 1966–67 to date.*[8] The issue thus becomes what portion, if any, of the excess assessment the Township may recoup by way of a readjustment credit under *N. J. S. A.* 54:4–49.

■ Arguing that the allowance of a readjustment credit to plaintiffs for taxes improperly assessed will impose an enormous financial burden on the residents of the Borough, the Borough urges that the Township not be allowed to recoup excess taxes in the instant case. We cannot accept this suggestion. The Borough's residents obviously have no vested right to a lighter tax burden bestowed by an unconstitutional statute. The Township, however, does not have a right to a readjustment credit for *all* taxes improperly assessed under the per pupil formula. We agree with the Appellate Division that the Township may only recoup illegally assessed taxes for the period commencing with the 1968–69 school year. *Vail Mut. Assoc. v. Halpin, Speaker of House, supra,* 107 *N. J. Super.* at 533–534.

For the foregoing reasons, the judgment is affirmed.

---

*ex rel. Lodge v. O'Sullivan,* 46 *Ariz.* 551, 53 *P.* 2d 69 (1936) ; *Owens v. Green,* 400 *Ill.* 380, 81 *N. E.* 2d 149 (1948) ; *Sommers v. Patton,* 399 *Ill.* 540, 78 *N. E.* 2d 313 (1948) ; *Board of Trustees v. Com'rs. of Lincoln Park,* 282 *Ill.* 348, 118 *N. E.* 746 (1918) ; *People v. Gordon,* 274 *Ill.* 462, 113 *N. E.* 864 (1916) ; *People v. McBride,* 234 *Ill.* 146, 84 *N. E.* 865 (1908) ; *Weston v. Ryan,* 70 *Neb.* 211, 97 *N. W.* 347 (1903) ; *Oneonta Light & Power Co. v. Schwarzenbach,* 164 *App. Div.* 548, 150 *N. Y. S.* 76 (1914), *aff'd per curiam,* 219 *N. Y.* 588, 114 *N. E.* 1075 (1916).

[8]In accordance with the pertinent statutory scheme, the county board of taxation, charged with apportioning the amounts to be raised for regional school purposes among the constituent municipalities of the school district, continued to apportion regional school costs for purposes of assessment on a per pupil basis pending the outcome of this litigation:

> When an assessment has been reduced * * * on appeal * * * and the judgment of that appeal * * * has been further appealed, no deduction * * * shall be made with respect to the appealed assessment until the further appeal has been finally determined.

*N. J. S. A.* 54:4–49(c). After the propriety of the assessment has been finally adjudicated, the municipality will receive an adjustment credit. *N. J. S. A.* 54:4–49.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For reversal*—None.