HOPKINS, J. T. C.
This matter is before me on plaintiffs’ action to reverse the judgment of the Bergen County Board of Taxation with respect to the qualification of plaintiffs for remission or rebate by the county treasurer of a sum equal to one-half of the county tax rate for the tax year 1978 pursuant to N.J.S.A. 54:4-5. Defendants Closter, Demarest, Little Ferry and Cresskill have brought a motion for summary judgment pursuant to R. 4:46-1 et seq. The motion is predicated upon the absence of a genuine issue of any material fact necessary to support the motion and that defendants are entitled to such judgment as a matter of law. R. 4:46-2.
Specifically, defendants assert that the recent enactment of L. 1980, c.118, approved September 22, 1980, which supplemented N.J.S.A. 54:4-5, specifically precludes plaintiff borough from obtaining the county tax rebate at issue in this matter.
In order to fully understand the issues before the court, the history of N.J.S.A. 54:4-5, and the efforts of plaintiff borough to obtain the rebate or remission authorized therein, should be reviewed.
Prior to the enactment of L.1980, c. 118, N.J.S.A. 54:4-5 provided that:
A taxing district in a county of the first class having in excess of 800,000 population in which there has been located a State or county institution other than a park commission or lands owned or occupied by a park commission occupying more than 200 acres and not in excess of 400 acres of land, in the aggregate, shall have remitted or rebated by the county treasurer a sum equal to 'A of the county tax rate applied to the entire amount of ratables remaining *519 subject to taxation. A taxing district in such a county of the first class in which there has been located a State or county institution other than a park commission or lands owned or occupied by a park commission occupying in excess of 400 acres of land, in the aggregate, shall have remitted or rebated by the county treasurer a sum equal to % of the county tax rate applied to the entire amount of ratables remaining subject to taxation.
N.J.S.A. 54:4-5 was supplemented by the enactment of L. 1980, c. 118, approved September 22, 1980, as follows:
No taxing district which has not actually received a remission or rebate of county taxes pursuant to R.S. 54:4-5 for any full tax year occurring prior to the effective date of this act, shall receive a remission or rebate under that section for the current tax year or any other tax year whether occurring prior to or after the effective date of this act. Nothing contained in this act shall affect any remission or rebate of county taxes to be received pursuant to that section by any taxing district which actually received a remission or rebate for a full tax year occurring prior to the effective date of this act.
This act shall take effect immediately.
Plaintiff, despite its varied efforts, commencing with the tax year 1967, to obtain the benefits of N.J.S.A. 54:4-5, has still to obtain judicial support for its position. Paramus v. Capello, 66 N.J. 1, 326 A.2d 685 (1974); Paramus v. Bergen Cty., 1 N.J.Tax 126 (Tax Ct.1980). See also Bergen Cty. v. Paramus, 79 N.J. 302, 399 A.2d 616 (1979), which involved plaintiff’s efforts to tax county-owned land.
Prior to the recent supplement N.J.S.A. 54:4-5 provided a rebate of either one-half or three-fourths of a municipality’s share of county taxes if the following criteria were met:
(1) The municipality must be located in a county of the first class whose population exceeds 800,000;
(2) The municipality must have located within its boundaries at least 200 acres of state or county land to qualify for rebate of one-half of the county taxes, or at least 400 acres to qualify for a rebate of three-fourths of the county taxes;
(3) The acreage in question must be used and occupied by a state or county institution for a purpose other than parkland.
N.J.S.A. 54:4—5 became law in 1922. L.1922, c. 130, § 1. In the Statement to this legislation there was noted a concern for municipalities such as the Township of Cedar Grove in Essex County:
*520 This bill is proposed to correct an injustice to the Township of Cedar Grove, wherein the Overbrook Hospital is situated. The township is compelled to furnish tuition to the children of the various officials and attendants employed there, and is also compelled to record the vital statistics and to furnish protection to the inhabitants of said hospital, without receiving a dollar in return.
Thus, the Legislature, being aware of the predicament of municipalities such as Cedar Grove in having to maintain a tax-exempt county facility without being able to impose a tax thereon for local municipal or school purposes, determined to provide such municipalities with a rebate of one-half of the county taxes. Cedar Grove has continued to receive a rebate of one-half its county taxes since the inception of the statute. During the 1960s, the Town of Secaucus also received a rebate of county taxes under the provisions of N.J.S.A. 54:4-5 then in effect. However, Secaucus no longer qualifies. In addition to the present case wherein plaintiff borough is seeking the benefits of said statute, the Township of Mahwah in Bergen County is also pursuing similar litigation in the Tax Court.
N.J.S.A. 54:4-5 was amended on various occasions. See L.1928, c. 176; L.1932, e. 128; L.1952, c. 295; L.1968, c. 467, and L.1980, c. 118. The 1968 amendment restricted the rebate to municipalities located in first class counties which have an excess of 800,000 population. As a result of that amendment Hudson County was no longer a qualifying county, leaving only Bergen County, which became a first class county after the 1960 census, and Essex County as qualifying counties.
L.1980, c. 24, clarified N.J.S.A. 54:4-5 to provide that only nonparkland properties could be considered in determining the required acreage.
The supplement to N.J.S.A. 54:4-5, as enacted by L.1980, c. 118, approved September 22, 1980, constitutes the basis of defendants’ motion for summary judgment. The effect of that supplement was to restrict the remission or rebate of county taxes pursuant to N.J.S.A. 54:4-5 to those taxing districts which had actually received a remission or rebate for any full tax year occurring prior to the effective date of the act, provided, however, that nothing in the supplement should be deemed to affect any remission or rebate of county taxes to be received pursuant *521 to said statute by any taxing district which actually had received a remission or rebate for a full tax year occurring prior to the effective date of the act.
A reading of the supplement clearly discloses that its objective was to eliminate the right of those taxing districts, such as plaintiff, to the benefits of said rebate or remission, and restrict the rebate or remission to Cedar Grove and, in the event that Hudson County again became a qualified county, also the Town of Secaucus if it had the requisite state or county acreage.
Plaintiff does not dispute that the legislative objective, as well as the wording of the statute, would preclude it from continuing to claim a remission or rebate. However, it asserts that the supplement which effectively eliminated its rights under the statute is in derogation of its rights, and the rights of its taxpayers, under the Federal and New Jersey Constitutions. Specifically, the argument has been made that the rights to the 1978 tax rebate are vested and, therefore, cannot be affected by the supplement to N.J.S.A. 54:4-5; that plaintiff’s cause of action cannot be retroactively nullified; that the supplemental legislation is in violation of the Equal Protection and Due Process Clauses of the Federal Constitution, and that the supplemental legislation is private or special legislation, prohibited without public notice of intention to apply therefore, pursuant to N.J.Const. (1947), Art. IV, § VII, par. 8, and, additionally, as it was a private or special law relating to taxation, it was specifically in violation of N.J.Const. (1947), Art. IV, § VII, par. 9(6). Countering plaintiff’s position, defendants assert that Paramus, as a creature of the State, has no authority to assert the defense of a nonconstitutional legislative impact on the claimed rebate and, further, that the legislation was not unconstitutional.
Ordinarily, trial court should make every effort to avoid constitutional issues unless their determination is imperative in the disposition of the litigation. N. J. Sports and Exposition Auth. v. McCrane, 61 N.J. 1, 8, 292 A.2d 545 (1972); State v. Fair Lawn Service Center, Inc., 20 N.J. 468, 470-71,120 A.2d 233 *522 (1956); Tonsorial, Inc., v. Union City, 115 N.J.Super. 33, 277 A.2d 909 (Law Div.1971); Weisbrod v. Springfield, 1 N.J.Tax 583, 590 (Tax Ct.1980).
Here, however, there is the requirement that a summary judgment shall be rendered forthwith if there is no genuine issue of fact. R. 4:46-2. On the face of the statute, as supplemented by L.1980, c. 118, the motion must be granted, unless plaintiffs’ allegations of unconstitutional legislation have merit. To delay passing on the constitutional issue until after a trial to determine whether plaintiff was also disqualified on the additional ground that it did not contain the requisite 200 acres of state or county land which was being occupied or used, would require an assumption, without deciding, that plaintiff’s disqualification, pursuant to the supplemental legislation, was unconstitutional for the purposes of a trial. There is not present the choice of construing the statute in order to avoid the constitutional issue. Donadio v. Cunningham, 58 N.J. 309, 327, 277 A.2d 375 (1971).
Indeed, the court is aware that the legislative supplement to N.J.S.A. 54:4-5 can impact on the tax rates of the various taxing districts in Bergen County by virtue of actions which may be taken by the Bergen County Board of Taxation. N.J.S.A. 54:4—49 et seq., 52; Paramus v. Bergen Cty., supra. There is a need for the county board to know the effect of the supplemental legislation without undue delay. Accordingly; it is deemed imperative to test the supplemental legislation to determine its constitutional efficacy.
In determining whether plaintiffs, including those individual taxpayers of the Borough of Paramus who have intervened as individual party plaintiffs, can assert the defense that the supplemental legislation was unconstitutional, it is recognized that in McKenney v. Byrne, 82 N.J. 304, 315, n. 4, 412 A.2d 1041, n. 4 (1980), the court commented, without deciding, on whether a municipality has standing to raise constitutional questions. In that case the court was reviewing an attack on the constitutionality of the legislative provisions on the distribution of the *523 “gross receipts” tax on public utilities. The matter had been commenced by three individual taxpayers, and various municipalities intervened on behalf of the plaintiffs.
It is generally accepted that a municipality cannot rely upon the Fourteenth Amendment to the U.S. Constitution in an action against the state which created it. Williams v. Mayor of Baltimore, 289 U.S. 36, 53 S.Ct. 431, 77 L.Ed. 1015 (1933). Whether it can maintain such an action under a state constitution depends on the law of the affected state. In Williams, supra, the rights of the municipality under the Maryland constitution were evaluated as Maryland law was construed to give a municipality that right. In Glassboro v. Byrne, 141 N.J.Super. 19, 23, 357 A.2d 65 (App.Div.1976), certif. den. 71 N.J. 518, 366 A.2d 674 (1976), the court held that equal protection considerations do not apply to municipal corporations. It also stated, without comment, that the trial judge seemingly recognized that municipalities cannot be the subject of discriminatory practice by the State. In this context it went on to consider whether the contested legislation was in compliance with N.J.Const. (1947), Art. VIII, § II, par. 2. Further, in Kenney v. East Brunswick, 172 N.J.Super. 45, 410 A.2d 713 (App.Div.1980), the court held that a municipality may attack a statute as being in violation of the New Jersey Constitution.
In its present juncture, however, the subject case has individual plaintiffs who were permitted to intervene subsequent to the enactment of the supplement to N.J.S.A. 54:4-5. These individuals, all being property owners and taxpayers of the Borough of Paramus, do not have the same federal constitutional disability as the municipality. That they are affected is obvious from N.J.S.A. 54:4-6, which provides as follows:
Method of remission, rebate to taxpayer. — The county board of taxation shall by rule prescribe how the remission or rebate provided for in section 54:4-5 of this title shall be paid or credited to the collector of the taxing district by the county treasurer and how his proportionate part shall be returned or credited to each taxpayer.
If the supplement to N.J.S.A. 54:4-5 is constitutional, the plaintiff-taxpayers will be precluded from obtaining the benefit of a rebate of one-half of their county taxes for 1978.
*524 As the intervenors, they are bound by all anterior proceedings to the same extent as the original party. Masholie v. River Edge Estates, Inc., 135 N.J.Eq. 193, 197 (Ch.1944), aff’d 136 N.J.Eq. 118 (E. & A. 1944). They are, for all intents and purposes, original parties. 59 Am.Jur.2d, Parties, § 177 at 165; § 181 at 621-622. They have standing to contest the constitutional validity of L.1980, c. 118, under both the Federal and the New Jersey Constitution.
Acts of the Legislature are presumptively valid. Further, a statute will not be declared inoperative and unenforceable unless it is plainly in contravention of a constitutional mandate or prohibition. State v. Profaci, 56 N.J. 346, 349, 266 A.2d 579 (1970).
In objecting to plaintiffs’ allegation that the supplemental legislation is an unconstitutional special or private law, defendants have not challenged the position that there was no public notice of intention as required by N.J. Const. (1947), Art. IV, § VII, par. 8.
In any event, the subject matter does relate to taxation and exemption therefrom, as set out in N.J. Const. (1947), Art. IV, § 7, par. 9(6). The statute has been described as involving “[t]he concept of giving some kind of tax relief to municipalities which accommodate substantial areas of state and county-owned tax exempt lands and institutions within their borders. . . . ” Paramus v. Capello, 66 N.J. 1, 4, 326 A.2d 685 (1974). The Supreme Court also noted that “[t]he rebate provision [N.J.S.A. 54:4-5] is a limited counterpart of the tax exemption” and is designed to “compensate some municipalities for revenues they would have otherwise received if the property had not been exempt from taxation. .. . ” Bergen Cty. v. Paramus, 79 N.J. 302, 309, 399 A.2d 616 (1979). See also, N.J.S.A. 54:4-6, authorizing the county board of taxation to provide by rule the method by which the rebate or remission is to be returned to the taxpayers.
In Vreeland v. Byrne, 72 N.J. 292, 298, 370 A.2d 825 (1977), the court commented on the constitutional provision identifying certain subjects as eligible for treatment only by way of general *525 legislation. It was there pointed out that such provision became part of the Constitution of 1844 by amendment adopted in 1875 and that it was carried into the Constitution of 1947.
Further, as stated in 2 Sutherland, Statutory Construction (4 ed. 1973), § 40.01, the purpose behind the special law prohibitions was as follows:
The legislative and judicial processes [have] developed along different lines . . . the legislative process lacks the safeguards of due process and the tradition of impartiality which restrain the courts from using their powers to dispense special favors. Over the course of time, as a result, the propensities of legislatures to indulge in favoritism through special legislation developed into a major abuse of governmental power.
As the bulk of special laws grew, demands for reform became insistent, and constitutional prohibitions were enacted to limit the practice of enacting special legislation and to achieve greater universality and uniformity in the operation of statute law in respeet to all persons.
In testing whether any particular legislation is special, the initial inquiry must be to determine the purpose of the statute and the subject matter with which it is concerned. Vreeland v. Byrne, supra; Alfred Vail Mutual Ass’n v. New Shrewsbury, 58 N.J. 40, 48-49, 274 A.2d 801 (1971).
The purpose of L.1980, c. 118, was clearly to restrict the rebate or remission of county taxes to those communities which had previously been the recipient of such rebate or remission and, as such, to preclude otherwise qualified taxing districts from the same relief.
In Alfred Vail Mutual Ass’n v. New Shrewsbury, supra, the court quoted, with approval, from Harvey v. Essex Cty. Freeholder Bd., 30 N.J. 381, 389, 153 A.2d 10 (1959), the reviewing standard as follows:
In deciding whether an act is general or special, it is what is excluded that is the determining factor and not what is included. If no one is excluded who should be encompassed, the law is general. Another requirement of a general law is that it must affect equally all of a group who, bearing in mind the purpose of the legislation, are distinguished by characteristics sufficiently marked and important to make them a class by themselves, [at 49]
The ultimate issue is whether the classification imposed by the statute is reasonable, embracing all taxing districts which should properly be within its scope when viewed with respect to the *526 legislative objective. Alfred Vail Mutual Ass’n v. New Shrewsbury, supra; Roe v. Kervick, 42 N.J. 191, 233, 199 A.2d 834 (1964).
Defendants claim that N.J.S.A. 54:4-5, as supplemented by L.1980, c. 118, represents a legislative determination that Bergen County taxing districts are no longer eligible for the rebate because county taxes are substantially lower then Essex County taxes and, secondly, since Bergen County has 70 taxing districts and Essex County has 22 taxing districts, the burden imposed on Essex County taxing districts is obviously much greater than in Bergen County.
As previously noted, a determining factor in ascertaining that which is general legislation is what is excluded. If one is excluded who should be included, the law is special. Here, the legislation makes no mention of high or low county taxes. Indeed, what criteria are to be used to determine what is high or what is low, even if one assumes that such could constitute a reasonable classification? Where the objective of the original legislation was to grant relief to taxing districts having substantial county- and state-owned land within its boundaries, which could not be taxed, it is difficult to comprehend a reasonable classification which grants relief only when county taxes are “high,” recognizing that the relief granted shifts that burden to other taxing districts in the county. The argument made fails to show a rational basis between the problem and the remedy. Further, there is nothing in the statute which attempts to set up a class of that nature.
Defendant’s argument that, since Bergen County has more taxing districts than Essex, there is a greater burden of paying county taxes by Essex County taxing districts, fails to consider that taxing districts do not pay county taxes. The taxpayers of said districts make the payments and they are the ones who get the relief. N.J.S.A. 54:4-6. In any event, a population in excess of 800,000 is the criterion and not number of taxing districts.
*527 The Alfred Vail Mutual Ass’n case is particularly instructive herein. There the challenge was to a statute apportioning regional school district costs among those municipalities participating in the school district. The method of apportionment had been based on a ratio of respective assessed valuations. The amendment mandated that certain school districts apportion costs based on a ratio of the respective number of enrolled pupils. The effect of the amendment was limited to municipalities exhibiting certain detailed and specific historical characteristics. The court found that only one school district met the precise historical criteria of the statute and that “it was actually tailored to meet the exigencies of the” particular school district. Id. at 46, 274 A.2d 801. The court recognized, however, that such classification did not, in itself, violate the State Constitution. Rather, the classification “must be germane to the purpose of the enactment, resting on characteristics that substantially differentiate [those] included ... from those excluded . . . .” Id. at 48-49, 274 A.2d 801. The court concluded that, in light of the purpose of the statute to rectify the inequities caused by using the assessed valuation method in certain situations as opposed to the per pupil method, the classification criteria should be geared to include all those districts where the contemplated inequities exist. The court held:
... Clearly, a classification based merely on the historical temporal order of regionalization and the chance that the school district is comprised of exactly two municipalities rather than two or more governmental units has no rational relationship to the purpose of the statute which is to equalize the financial burden on constituent members of regional school districts... . The act in question thus arbitrarily excludes from the per pupil apportionment mandate comparable regional school districts which may have the same qualities and situation, namely, a disproportionate sharing of regional school expenses between the constituent municipalities when viewed with respect to the actual per pupil cost of education, [at 50]
They are striking similarities between the legislation at issue in the Alfred Vail Mutual Ass’n case and the subject legislation in that they both were obviously directed to restricting the relief to one community.
Defendants further argued that the Legislature has broad discretion in creating statutory formulas for apportionment of *528 county costs. Trenton v. Mercer Cty. Bd. of Tax., 155 N.J.Super. 181, 382 A.2d 651 (App.Div.1977). In this respect it is argued that the apportionment of county taxes among constituent municipalities is essentially a political decision and that limiting the rebate to Cedar Grove was a proper exercise of the legislative discretion in the political arena. In McKenney v. Byrne, supra at 319, n. 5, 412 A.2d 1041, n. 5, the court specifically rejected the argument that tax apportionment presented a nonjusticiable political question.
In applying the recognized criteria for determining special laws to N.J.S.A. 54:4-5, as supplemented by L.1980, c. 118, the supplemental legislation, without rational basis, effectively excluded plaintiff borough, as well as other taxing districts, from the previously authorized relief and restricted that relief to Cedar Grove even though the plaintiff and at least one other taxing district claim the same characteristics and qualifications as Cedar Grove. In so doing, N.J.S.A. 54:4-5, as supplemented by L.1980, c. 118, became special legislation relating to taxation or exemption therefrom and is in violation of N.J. Const. (1947), Art. IV, § VII, par. 9(6). As defendants do not dispute that the supplemental legislation was enacted without public notice of intention to apply therefor, it is also in violation of N.J. Const. (1947), Art. IV, § VII, par. 8.
In view of the above, it is unnecessary to consider plaintiffs’ other constitutional arguments.
The argument has also been made that, if this court should find the supplemental legislation to have an unconstitutional impact on N.J.S.A. 54:4-5, then the supplemental legislation should be deemed invalid and the statute, as it existed prior thereto, should be deemed to remain in full force rather then being declared totally unconstitutional due to the taint of the supplemental legislation. Inganamort v. Fort Lee, 72 N.J. 412, 371 A.2d 34 (1977). As this case involves the efficacy of the statute as of October 1, 1977, it is not necessary to determine whether N.J.S.A. 54:4-5 should be considered to exist after the effective date of the unconstitutional supplemental legislation *529 by application of the doctrine of severability. N.J.S.A. 1:1 — 14 provides for the continuation of proceedings commenced prior to the repeal of any act. See also, State v. Exxon Corp., 151 N.J.Super. 464, 376 A.2d 1339 (Ch.Div.1977).
Defendants’ motion is denied.