EWING TOWNSHIP, PLAINTIFF, v. WILBUR H. MATHESIUS, ET AL., DEFENDANTS.

Superior Court of New Jersey
Law Division Mercer County

Decided January 6, 1983.

*Charles P. Allen, Jr.,* for plaintiff (*Dietrich, Allen* and *St. John,* attorneys).

*Michael T. Hartsough* for defendants (*Paul T. Koenig, Jr.,* attorney).

LASSER, P.J.T.C. (temporarily assigned).

This is an action in lieu of prerogative writ by Ewing Township seeking to compel the Mercer County Executive, the Mercer County Board of Chosen Freeholders and Mercer County to pay to Ewing a rebate of 45% of the 1982 county tax paid by Ewing to Mercer County. This rebate is sought pursuant to *L.*1982, *c.* 36, which repealed *N.J.S.A.* 54:4–5, the county tax rebate statute, and substituted a statute phasing out the county tax rebate. Defendants have moved to dismiss the complaint on the ground that it fails to state a claim upon which relief can be granted or, in the alternative, that Ewing failed to exhaust its administrative remedies.

Defendants urge dismissal of the complaint because Mercer County Airport is not a "county institution" within the meaning and intent of chapter 36 of the *Laws of* 1982.

*N.J.S.A.* 54:4–5 was originally enacted in 1922. At the time of its repeal it provided that a taxing district in a county of the

first class having a population in excess of 800,000, and in which there is located a state or county institution other than a park commission, occupying more than 200 but less than 400 acres, is entitled to a rebate of 50% of the county taxes paid by it. The rebate increases to 75% of the county taxes if the institution occupies more than 400 acres. The statement attached to the 1922 bill stated:

> This bill is proposed to correct an injustice to the township of Cedar Grove, wherein the Overbrook Hospital is situated. The township is compelled to furnish tuition to the children of the various officials and attendants employed there, and is also compelled to record the vital statistics and to furnish protection to the inhabitants of said hospital, without receiving a dollar in return.

When changed circumstances and the passage of time permitted taxing districts other than Cedar Grove to qualify under the act, limiting amendments were enacted. Limiting amendments were enacted in 1932 (chapter 128), in 1952 (chapter 295), in 1968 (chapter 467), in 1972 (chapter 154) and in 1980 (chapter 118). Cedar Grove has received a rebate of one-half its county taxes since 1923. During the 1960s the town of Secaucus also received a rebate of county taxes. The 1968 amendment added the 800,000 population limitation, which disqualified Secaucus because Hudson County did not meet this population requirement. The efforts of Bergen County taxing districts to obtain a rebate resulted in the 1980 supplement (*N.J.S.A.* 54:4–5.2) which limited the county tax rebate to those taxing districts which had received a rebate prior to 1980. *Paramus v. Bergen Cty.,* 2 *N.J.Tax* 515, 520–521 (Tax Ct.1981).

When Bergen County's population exceeded 800,000, Paramus and Mahwah instituted actions seeking rebates of county taxes because Bergen County College and Ramapo College were within their respective borders. On November 20, 1981, in *Mahwah Tp. v. Bergen Cty.,* 3 *N.J.Tax* 513 (Tax Ct.1981), the court held the rebate statute to be special legislation violative of Art. IV, § 7, par. 9 of the New Jersey Constitution, on the ground that there was no rational basis for limiting the classification to taxing districts located in counties of the first class with a population exceeding 800,000.

On June 10, 1982 chapter 36 of the *Laws of* 1982 was enacted retroactive to January 1, 1982, repealing *N.J.S.A.* 54:4–5 and substituting a statute phasing out the county tax rebate. Under chapter 36 a qualified taxing district is entitled to a rebate of 45% of its county taxes for 1982, with the rebate declining to 40% in 1983, 30% in 1984 and 15% in 1985 and 1986. After 1986 there is to be no rebate. The act deleted the offending reference to counties of the first class having a population exceeding 800,000, but limited the rebate to a taxing district having within its borders a county institution occupying more than 200 acres and constituting at least 5% of the total land area of the taxing district. The enactment of chapter 36 further limited the county tax rebate by providing that a taxing district in which a *state* institution or a county *educational* institution is located is not entitled to a county tax rebate.

The Senate County and Municipal Government Committee Statement attached to Senate Bill 1064, which became chapter 36, states: "This legislation would not be confined to counties of any particular population size or class. However, the land area restrictions in the bill are such that only Cedar Grove in Essex County would qualify. Cedar Grove has been receiving a rebate of county taxes since 1923."

On July 19, 1982 Ewing Township, by letter to the business administrator of Mercer County, requested a county tax rebate for the 1,200 acres occupied by Mercer County Airport. On July 21, 1982 the business administrator replied, stating that Mercer County Airport did not come within the purview of the statute. He offered to discuss the county's position with the township administrator. On July 22, 1982 Senate Bill 1636 was introduced. This bill supplemented chapter 36 of the *Laws of* 1982 by defining "county institution" as any institution defined in *N.J.S.A.* 30:4–23 or *N.J.S.A.* 30:7B–2. This definition limits county tax rebate qualification to a taxing district with a county-owned, operated and maintained mental institution within its borders. On August 4, 1982 Ewing Township renewed its demand for the county tax rebate pursuant to a resolution

adopted by the township council on August 2, 1982. On August 11, 1982 a letter from the county counsel to the township counsel denied the rebate on the ground that "Senate Bill 1064 does not apply to the Ewing Township situation." On September 1, 1982 Senate Bill 1636 was enacted as chapter 121 of the *Laws of* 1982, retroactive to January 1, 1982. On September 14, 1982 Ewing Township filed this complaint in lieu of prerogative writs.

In their motion defendants contend that Mercer County Airport is not a "county institution" as defined in chapters 36 and 121. They argue that the intent of the Legislature was to limit the county tax rebate to Cedar Grove, not expand the scope of entitlement granted under the prior act. In the alternative, defendants contend that plaintiff should have exhausted its administrative remedies before the Mercer County Board of Taxation in accordance with *Paramus v. Bergen Cty.*, 1 *N.J.Tax* 126 (Tax Ct.1980).

In response to this motion plaintiff argues that since the validity of chapter 121 is being challenged in a separate action, any ruling in this case must await the outcome of that suit.[1] It contends that chapter 36 was enacted to satisfy the prohibition against unconstitutional special legislation which existed in the prior statute, *N.J.S.A.* 54:4–5. It further contends that chapter 121 "appears to place the legislative scheme again in the same conflict with the constitution." Plaintiff also contends that the rebate granted to it by chapter 36 is a vested right which cannot be denied to it retroactively by chapter 121.

Plaintiff also argues that the county board of taxation has no jurisdiction over this claim and that it was not required to seek relief first from the county board of taxation or, if it was required to do so, failure to comply should not defeat a claim

---

[1] On October 18, 1982 Ewing filed a second complaint in lieu of prerogative writs, naming the Governor, the Senate, the General Assembly, the County of Essex and the Township of Cedar Grove as defendants, and alleging that chapter 121 of the *Laws of* 1982 is unconstitutional. There has been no hearing on this complaint.

involving a substantial public issue. In the alternative, it argues that time limitations, if any, should be tolled.

At the oral argument counsel agreed that there were no facts in dispute and that the motion could be disposed of on the pleadings and the oral argument of the motion. Although in the separate action Ewing Township is seeking a ruling that chapter 121 is unconstitutional, it does not contend that chapter 36 is unconstitutional.

■ Where a substantial public issue is involved, the court is reluctant to dispose of the case on purely procedural grounds. *Hackensack v. Rubenstein,* 37 *N.J.* 39, 51 (1962). Therefore, I will first address the substantive question of whether the complaint states a claim upon which relief can be granted. Defendants argue that Ewing Township is not entitled to a county tax rebate because Mercer County Airport is not a "county institution" within the meaning and intent of chapter 36.

Prior to the enactment of chapter 121 there was no definition of the term "county institution" in the county rebate statute. *N.J.S.A.* 1:1–1 provides that words and phrases in the construction of statutes shall be given their generally accepted meaning according to the approved usage of the language, and technical words having a special or accepted meaning in the law shall be construed in accordance with such special or accepted meaning.

The word "institution" comes from the Latin *institutio* which means "established custom." "Institution" is defined in *Webster's New International Dictionary* (3 ed. 1971) as:

... a significant and persistent element (as a practice, a relationship, an organization) in the life of a culture that centers on a fundamental human need, activity, or value, occupies an enduring and cardinal position within a society, and is usually maintained and stabilized through social regulatory agencies.

It is also defined as:

... an established society or corporation: an establishment or foundation, especially of a public character ... [A] building or the building occupied or used by such organization.

The sociological definition of institution is:

(1) An enduring, complex, integrated, organized behavior pattern through which social control is exerted and by means of which the fundamental social desires or needs are met.

(2) An organization of a public, or semi-public, character involving a directive body, and usually a building or physical establishment of some sort, designated to serve some socially recognized and authorized end. In this category fall such units as colleges and universities, orphan asylums, hospitals, almshouses, etc.

*Fairchild, ed., Dictionary of Sociology* (1944).

An institution is a special kind of organization. It is an entity which, over time, has developed a capacity to act as agent for the larger society by providing valued functions and services. An institution embodies certain values and norms which it represents and promotes in society. In common usage, an institution is generally recognized as being a college, church, prison or hospital, all of which have as a goal the good of society and the preservation and promotion of customs and conduct deemed desirable.

An airport does not conform with this definition. It has limited objectives related to transportation rather than broader cultural or idealistic goals generally regarded as improving society. Whether publicly or privately owned and operated, an airport has a commercial aspect not usually associated with organizations characterized as institutions. We would no more call an airport an institution than we would a railroad station or a bus station.

When the Legislature originally enacted *N.J.S.A.* 54:4–5 in 1922, it could not have intended that an airport be included as a county institution, aviation being in its infancy at the time. It is also apparent that subsequent amendments did not intend to include airports as county institutions.

The county tax rebate statute was enacted to assist a taxing district which had lost ratables and incurred expenses because a county institution was located within its borders. The rebate statute reduces the tax burden of a qualifying taxing district. However, it adds to the tax burden of the other taxing districts in that county. They must share the cost of the tax rebate granted to the qualifying taxing district, no matter how deserving each of the nonqualifying taxing districts may be by reason of tax-exempt properties within their borders. I note that

Ewing Township receives approximately $200,000 in taxes each year from local property tax assessments on hangars and other facilities leased by commercial enterprises at Mercer County Airport.

The Supreme Court strictly construed qualification under the County Tax Rebate Act in *Paramus v. Capello*, 66 *N.J.* 1 (1974). In that case Paramus sought a county tax rebate because of the location within its borders of Bergen Pines Hospital, a state highway maintenance garage and motor vehicle station and other property aggregating more than the required 200 acres. The court interpreted the requirement that the institution "occupy" the land as requiring, in addition to ownership, active governmental use of all of the land. *Id.* at 4–5. The court held that large sections of the 185-acre Bergen Pines Hospital complex were unused, and affirmed the Division of Tax Appeals' decision, holding that the requirement to "occupy" was not satisfied. The court noted that the Division of Tax Appeals also held that land used by the state highway maintenance garage and motor vehicle station was not occupied by an "institution" under the statute. *Id.* at 3.

I am compelled to conclude that the words "county institution" in chapter 36 were intended by the Legislature to be limited to organizations which are commonly understood to be special and distinct because of their contribution to the improvement of society. I cannot conclude that the Legislature intended these words to grant a county tax rebate to county airports when the clear intent of the Legislature was to limit the rebate, not expand it.

Inasmuch as I have concluded that a county airport is not a "county institution" within the meaning and intent of chapter 36 of the *Laws of* 1982, it is unnecessary to delay the decision on defendants' motion to dismiss the complaint until the constitutionality of chapter 121 is decided in a separate action. The constitutionality of chapter 36 is not here in question.

Because of the foregoing holding, it is also unnecessary to consider the question of exhaustion of administrative remedies.

Defendants' motion to dismiss the complaint for failure to state a claim is granted.