INFOCOMP CORPORATION, A CORPORATION, PLAINTIFF-APPELLANT, v. SOMERSET TRUST COMPANY, DEFENDANT-RESPONDENT, AND STC CORP., DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued October 17, 1978—Reargued December 12, 1978—Decided January 30, 1979.

Before Judges LYNCH, CRANE and HORN.

*Mr. Robert B. McFarland* argued the cause for appellant (*Messrs. Lee* and *McFarland,* attorneys).

*Mr. Ralph L. Straw, Jr.* argued the cause for respondent (*Messrs. Wharton, Stewart & Davis,* attorneys).

*Mr. Mark S. Rattner,* Deputy Attorney General, argued the cause as *amicus curiae* (*Mr. John J. Degnan,* Attorney General, attorney; *Ms. Erminie L. Conley,* Assistant Attorney General, of counsel).

The opinion of the court was delivered by

HORN, J. A. D. This case presents the question of whether a state-chartered bank is authorized under our law to engage in the business of providing data-processing services.

Plaintiff InfoComp Corporation sought a permanent injunction to restrain defendant Somerset Trust Company and its wholly owned affiliate, STC Corp., from providing such services.[1]

Defendant's motion to dismiss the complaint and cross-motions for summary judgment were denied before trial. At the trial in the Chancery Division, after plaintiff presented all its proofs, the judge entered judgment for defendant on the latter's motion pursuant to *R.* 4:40–1. In granting the motion the judge held that plaintiff failed to prove a cause of action. *Dolson v. Anastasia,* 55 *N. J.* 2 (1969). Plaintiff appealed from that judgment.

After we heard oral argument, since we deemed this cause to involve an important question of public policy and statutory interpretation, we requested the Attorney General, as representative of the public interest, to file a brief as to the issues. We also permitted the parties to file additional briefs, and scheduled the matter for reargument. *Evans-Aristocrat Industries, Inc. v. Newark,* 140 *N. J. Super.* 226 (App. Div. 1976), aff'd 75 *N. J.* 84 (1977); *Samuel Hird & Sons, Inc. v. Garfield,* 87 *N. J. Super.* 65, 75 (App. Div.

---

[1] STC was dismissed from the case by consent of plaintiff, so that the sole remaining defendant is the bank.

1965) ; *Keenan v. Essex Cty. Bd. of Chosen Freeholders,* 105 *N. J. Super.* 271 (Law Div. 1969). The Attorney General filed a brief and appendix in behalf of the New Jersey Department of Banking as *amicus curiae.* The matter was duly reargued by all parties.

In an oral opinion the trial judge rested his determination principally upon his interpretation of *N. J. S. A.* 17:9A–24.1, which defines bank services, and *N. J. S. A.* 17:9A–25(13), which authorizes banks to act as fiscal agents, and the fact that the clerical function encompassed by the computerized record-keeping is in fact a banking function. Contrary to plaintiff's contention, we are satisfied that the motion was properly granted pursuant to *R.* 4:40–1, as interpreted in *Dolson v. Anastasia, supra* 55 *N. J. Super.* at 5. Accepting as true all the evidence which supports plaintiff's position and according plaintiff the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could not differ in concluding that plaintiff had failed to prove any right to relief.

Plaintiff is a New Jersey corporation, having been incorporated in June 1969. Its principal place of business is located on Church Road, Mount Laurel, New Jersey. Since its incorporation plaintiff has been engaged in the general data processing business and has provided extensive services to local governmental bodies and county boards of taxation in preparation of real property tax assessment records and tax bills, and has also provided water- and sewer-assessment records and bills for local governmental bodies and municipal utility authorities, voter registration records for boards of education, jury lists and incidental reporting data to various police departments. Although plaintiff has performed some data processing services for nongovernmental entities, approximately 90% of its annual gross income results from its data processing services to various governmental bodies.

Defendant bank, incorporated in this State under the provisions of *N. J. S. A.* 17:9A–1 *et seq.,* maintains various offices for the conduct of general banking business. These

offices are located within the County of Somerset, New Jersey. Defendant admits that it solicits data processing business and provides data processing services to various municipal and county governmental bodies. These services include the preparation of real property tax assessment records, tax accounting records, and water and sewer assessments in competition with plaintiff. It claims that the providing of such records is a proper and valid banking activity under the provisions of *N. J. S. A.* 17:9A–1 *et seq.*

The principal activity in which the parties compete is the preparation of real property tax assessment records for either local tax assessors or county boards of taxation. Contracts are generally awarded by competitive bidding. The local assessor supplies the raw real property assessment information. The data processor places the information into a computer. The stored information is updated whenever the local assessor reports changes. Three times a year the data is evaluated and compiled in lists by the data processor. The local assessor is thus provided with an alphabetical index of all property owners in the municipality; a listing of each block and lot setting forth the names and addresses of the owners; a description of the property, and its classification and assessed value. Data are also compiled on the value of property by district and also by classification (*e. g.*, residential, farm or industrial).

A draft or proof copy of the real property tax assessment records is prepared in December of each year. The official list is prepared by January 10. A copy is provided to the county board of taxation, the local assessor for use as his field book and the tax collector so that he may prepare tax bills. Finally, in April a real property extended tax duplicate is prepared, which is the same as the official tax list but also shows the actual amount of taxes assessed. This list is provided only to the tax collector. With this service the data processor's functions with regard to record compilation are complete.

Data processing services provided to municipal water and sewer utilities are very similar. The utility provides the data processor with the raw information. It is then stored, compiled and analyzed by the data processor.

The respective parties have also contracted to prepare tax bills for a number of tax collectors. Accounting services have also been supplied to tax collectors, whereby tax-payment records have been maintained. These services are a relatively small portion of the overall business. Neither party ever handles tax funds in connection with this work.

Defendant has been providing such data processing services since approximately 1966. Forty-seven percent of its data processing work is devoted to internal banking matters, with the remainder applied to these outside services. Plaintiff's expert in data processing equipment verified that defendant maintains data processing equipment greatly in excess of its internal banking requirements.

The aforementioned services are provided by other competitors in addition to the parties to this case. These competitors include two or three banks and at least seven non-banking corporations. With the exception of certain municipalities in the Somerville area, defendant does not have any relationship or other business dealings with the various municipalities for which it provides the stated services. It operates in about 14 counties of the State. It does not receive payments of taxes.

The present action was preceded by efforts by plaintiff to have the federal Comptroller of the Currency prevent one of the competitor banks from engaging in the activities in question. The Comptroller refused to take any action. Plaintiff also sought the assistance of the Commissioner of Banking in ending defendant's participation in this field. The Commissioner took no action other than having a Deputy Commissioner respond by referring plaintiff to "Chapter 160, Laws of 1964 (Sections 24.1 through 24.6 of The Banking Act of 1948, as amended). This chapter refers

to the services which may be provided by New Jersey banks. No regulations have been promulgated pursuant to the statute."[2]

■ The powers of state banks in general are codified in *N. J. S. A.* 17:9A–24 through 26.1. In 1964 the Legislature enacted a series of provisions encoded in *N. J. S. A.* 17:9A–24.1 through 24.6, sometimes unofficially referred to as the Bank Services Act. The thrust of this act is to enable banks and savings banks to avail themselves of, and invest in, bank service corporations, which are limited to the performing of "bank services" for banking institutions. *N. J. S. A.* 17:9A–24.2. "Bank services" are defined as "services such as check and deposit sorting and posting, computation and posting of interest and other credits and charges, preparation and mailing of checks, statements, notices, and similar items, or *any other clerical, bookkeeping, accounting, statistical, or similar functions*" (emphasis added). *N. J. S. A.* 17:9A–24.1(a). The resolution of the issue in this case is largely dependent upon the interpretation of this section of the law, and particularly the phrase "or any other clerical, bookkeeping, accounting, statistical, or similar functions."

It is not suggested that defendant is a bank service corporation. However, *N. J. S. A.* 17:9A–24.3 provides: "Banks and savings banks may perform for other banking institutions *and others than banking institutions* any service or services which may be rendered by bank service corporations to banking institutions (emphasis supplied). Supplementing the foregoing is *N. J. S. A.* 17:9A–24.4, empowering the Commissioner to broaden the scope of the definition of "bank services" and to prescribe the extent to which banks may perform "bank services" for other than banking institutions. On the other hand, bank service corporations are limited by *N. J. S. A.* 17:9A–24.5 to providing such services only to

---

[2] *N. J. S. A.* 17:9A–24.1 through 24.6.

banks. Thus the legislative scheme is not obscure. Bank service corporations may perform services for banks only. Banks, however, have all the powers of bank service corporations and may provide such services not only for other banks but also for others than banks.

It is reasonable to assume, as stated by defendant, that

\* \* \* The legislative intent in enacting *N. J. S. A.* 17:9A–24.5 was to complement the regulatory powers of the Commissioner set forth in *N. J. S. A.* 17:9A–24.4 and to assure that bank service corporations would engage in providing data processing services for others than banking institutions only under the regulatory control of the Commissioner. This prevents banks from setting up bank service corporations which could operate entirely without restriction. \* \* \* On the other hand, there is no reason for subjecting banks to the Commissioner's control because obviously they are already subject to his administrative direction. *N. J. S. A.* 17:1–1 and 17:1B–1. \* \* \* .

We agree with defendant that the keeping of real estate, water and sewer tax accounting records is a "clerical," "bookkeeping" or "accounting" function. And the fact that these records are kept mechanically or electronically through data processing does not alter the nature of the function.

Plaintiff insists that the trial judge disregarded basic rules of statutory construction in failing to apply the rule of *ejusdem generis* to the critical language of *N. J. S. A.* 17:9A–24.1(a) : "or any other clerical, bookkeeping, accounting, statistical or similar functions." Thus plaintiff contends, in reliance upon *Denbo v. Moorestown Tp.,* 23 *N. J.* 476 (1957), that this phrase, appearing at the conclusion of the definition of bank services, must be construed to mean only services similar in nature to those previously enumerated in that definition. It further contends that the specific words in the definition of bank services describes activities and services which are unique to financial institutions and in particular to banks, a category not embracing the data processing services in question.

This contention is unacceptable. It rests upon a belief that the rule of *ejusdem generis* is absolute. As stated in

*Salomon v. Jersey City,* 12 *N. J.* 379, 389 (1953), the rule is not absolute in the sense of being arbitrary. That rule merely "serves as a helpful guide in ascertaining legislative meaning." Such a rule must be subordinated to the paramount purpose of construing a statute to ascertain the legislative intent. *Union Cty. Bd. of Freeholders v. Union Cty. Park Comm'n,* 41 *N. J.* 333, 337 (1964). As stated in 2A *Sutherland, Statutory Construction* (4 ed 1973), § 47.18 at 111: "Modern commentators have tended to be critical of the rule of ejusdem generis, treating it as a vapid legalism."

Plaintiff acknowledges that the traditional business of banks has changed in recent years. In 1969 the Legislature added to the powers of banks, allowing them to provide travel services and messenger services, and to issue credit cards, as well as to acquire as owner and lessor personal property for the use of customers. *N. J. S. A.* 17:19A–25.5. But plaintiff argues that such express authorization implies that data processing services were not authorized, since there is no express authorization for data processing. We think otherwise. The language used in the Bank Services Act to permit the services as bank services is sufficiently evidential of the legislative intent to authorize banks to furnish such services. See *Hudson Cty. Nat'l Bank v. Provident Inst. of Savings,* 80 *N. J. Super.* 339 (Ch. Div. 1963), aff'd 44 *N. J.* 282 (1965), wherein it was stated that:

> * * * [A] statute which purports to encompass such a large and vital area as the business of banks and banking should be read as a whole with reference to the system of which it is a part. [at 348]

Additional support for the view that state-chartered banks may perform the described data processing services may be derived from *N. J. S. A.* 17:9A–24.4. That section also authorizes the Commissioner of Banking to promulgate regulations designed, to the extent necessary, to maintain parity between state banks, state savings banks and state bank-service corporations and their federal counterparts. To that end the Commissioner has the power, as already noted, to

broaden the scope of the definition of "bank services" to include others than banking institutions as the recipients of services rendered by bank-service corporations. These reserved powers of the Commissioner are clear evidence of the legislative desire that the definition of "bank services" and the permissible pool of recipients of these services should be viewed as flexible concepts. Had the Legislature intended the rigid, traditional interpretations urged by plaintiff, the Legislature would not have delegated to the Commissioner such expansive interpretative abilities.

We do not overlook *N. J. S. A.* 17:9A–24(12), authorizing banks and savings banks "to exercise all incidental powers, not specifically enumerated in this act, which shall be necessary or convenient to carry on the business of the bank or savings bank."

The one time this section has been construed in this State, Judge (now Justice) Pashman rejected the interpretation that incidental powers may not be used to create powers not expressly enumerated in favor of a broader reading, although he held that the section cannot give vitality to a proscribed activity. *Hudson Cty. Nat'l Bank v. Provident Inst. for Savings, supra,* 80 *N. J. Super.* at 356.

We need not be concerned with the correctness of the judge's reliance to some degree on *N. J. S. A.* 17:9A–25(13), which authorizes banks to act as fiscal agents of the United States, "and of any corporation, and of any State, county, municipality * * * and to perform all duties of such fiscal agent as may be lawfully required * * *." In the light of the foregoing, we are satisfied that the Legislature intended to authorize banks to engage in the activities to which plaintiff objects.

The Department of Banking concurs in the arguments advanced by defendant. Additionally, it brings to our attention the fact that the Bank Services Act, *N. J. S. A.* 17:9A–24.1 *et seq.,* was patterned after the federal Bank Services Corporation Act, 12 *U. S. C. A.* § 1861 *et seq.,* which predated the New Jersey act by two years. The New Jersey

Legislature made several major departures from the federal act. The New Jersey act permits "banks and savings banks" as well as "bank service corporations" to provide bank services. Compare *N. J. S. A.* 17:9A–24.3 and 12 *U. S. C. A.* § 1864. The federal act provides:

> * * * "[B]ank services" means services such as check and deposit sorting and posting, computation and posting of interest and other credits and charges, preparation and mailing of checks, statements, notices, and similar items, or any other clerical, bookkeeping, accounting, statistical, or similar functions *performed for a bank.* [12 *U. S. C. A.* § 1861(b) ; emphasis added]

The language of *N. J. S. A.* 17:9A–24.1(a) is identical except the requirement that the services be "performed for a bank" has been deleted. The federal act by its terms clearly limits the activities of a federal bank-service corporation to the providing of services for banks. 12 *U. S. C. A.* § 1864. The New Jersey Legislature, by removal of the limitation contained on bank services, demonstrated an awareness of the narrow scope of the federal act and a clear intention to allow New Jersey banks and savings banks to provide such services, which are not necessarily of a type traditionally performed by a bank for others. *N. J. S. A.* 17:9A–24.3. The freedom granted to banks to provide services to "others than banking institutions" would be rendered nugatory if a restrictive definition of "bank services" was adopted.

Finally, although an appellate tribunal is in no way bound by an agency's interpretation of a statute, interpretation by an agency responsible for its enforcement is entitled to great weight. *In re Application of Saddle River,* 71 *N. J.* 14, 24 (1976). We do not overlook the beneficial effect of competition in the field of supplying such services to public entities. The contracts for which the parties are competing are, by and large, public contracts which must be advertised and bid. *N. J. S. A.* 40A:11–4. In fact, plaintiff's president acknowledged the loss of a substantial number of contracts to defendant due to being underbid by the bank. Defendant's

392

bidding participation in this area of data processing, along with that of other banks and nonbanking institutions, fosters the purpose of the Local Public Contracts Law, *N. J. S. A.* 40A:11–1 *et seq.*, which is to benefit taxpayers by securing competition and by guarding against favoritism, improvidence, extravagance and corruption. *Capasso v. Pucillo,* 132 *N. J. Super.* 542, 549–550 (Ch. & Law Divs. 1974), aff'd 132 *N. J. Super.* 473 (App. Div. 1974); *Pied Piper Ice Cream v. Essex Cty. Park Comm'n,* 132 *N. J. Super.* 480, 484 (App. Div. 1975).

For the foregoing reasons the judgment entered in the trial court is affirmed.