221 N.J. Super. 207 (1987)
534 A.2d 77
PHILADELPHIA OUTDOOR, PETITIONER-RESPONDENT,
v.
NEW JERSEY EXPRESSWAY AUTHORITY, RESPONDENT-APPELLANT, AND NEW JERSEY DEPARTMENT OF TRANSPORTATION, OUTDOOR ADVERTISING SECTION, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted October 13, 1987.
Decided November 23, 1987.
*210 Before Judges J.H. COLEMAN, HAVEY and STERN.
Gruccio, Pepper, Giovinazzi, DeSanto & Mann, attorneys for appellant (Cosmo A. Giovinazzi, III, on the brief).
Joseph T. Wilkins, attorney for respondent Philadelphia Outdoor (Joseph T. Wilkins on the brief).
W. Cary Edwards, Attorney General of New Jersey, attorney for respondent New Jersey Department of Transportation (Michael R. Clancy, Deputy Attorney General, of counsel; Robert D. Blau, Deputy Attorney General, on the brief).
The opinion of the court was delivered by HAVEY, J.A.D.
This is an appeal by the New Jersey Expressway Authority (Authority) from a final decision of the Commissioner of the New Jersey Department of Transportation (DOT) granting an outdoor advertising permit to respondent Philadelphia Outdoor (Philadelphia). N.J.S.A. 54:40-60(1) and (2) prohibit the issuance of an outdoor advertising permit where the erection of the sign would "... injuriously affect any public interest ..." or "... endanger the interests of public safety, health or morals[.]" In granting the permit, the Commissioner found that the Authority failed to demonstrate that the proposed sign would "create such a unique set of circumstances that the travelling public would be endangered." She also concluded *211 that the Authority failed to prove "... a correlation between frequency ... of accidents and the presence of outdoor advertising...." We now reverse. We conclude that the Commissioner applied an incorrect standard and that her decision is not supported by sufficient credible evidence on the record. We also conclude that N.J.S.A. 54:40-60(1) and (2) and its attendant regulation are not violative of the First Amendment's guarantee of free expression.
Philadelphia filed an application for an outdoor advertising permit with the Outdoor Advertising Section of the DOT. The billboard had dimensions of 16' X 60' and is to be placed on property adjacent to the right-of-way of the Atlantic City Expressway. The proposed double-faced, illuminated sign is to be located approximately 400' west of an overpass (the Fire Road overpass) and 400' east of the exit ramp for exit 7N by which traffic exits the expressway to travel north on the Garden State Parkway. The location of the proposed sign is adjacent to the deceleration lane which leads to the 7N off-ramp. The Authority objected to the billboard application on the grounds of traffic safety and aesthetics. After an informal hearing and a site inspection, the DOT's project engineer of maintenance, Robert Macai, denied the application. Philadelphia appealed.
At the hearing held before the administrative law judge, Macai, having over 30 years of experience involving highway safety, testified that he made two site inspections and drove by the proposed site six times. Macai noted that vehicles frequently exceeded the 55 m.p.h. speed limit and that the exit ramp at exit 7N is not visible to west-bound traffic until the driver passes under the Fire Road overpass. He also observed vehicles frequently crossing over from the fast lane to use the exit ramp and in many instances passing the exit ramp, and then backing-up to the ramp area to exit at 7N. It was Macai's view that locating a sign at the location would worsen an already hazardous situation by distracting the attention of drivers. The ALJ therefore denied Philadelphia's application.
*212 Albert Effinger, Superintendent of Toll Repairs for the Authority, also testified concerning the heavy traffic, the erratic maneuvers approaching exit 7N and his observation of vehicles backing-up after missing the exit ramp. He was aware of one fatal accident that occurred in the 1970's as a result of a driver backing-up after missing the exit. Anthony Marino, Manager of Finance Administration for the Authority, testified that the annual toll traffic at the Pleasantville toll plaza, two miles east of exit 7N, was 19,505,641 vehicles during the year 1984. He described the dramatic increase in traffic since the advent of casino gambling in 1978, and the heavy traffic volume during commuter hours and spring and summer months.
Dr. Ned Walton, a consulting engineer for the Authority, testified that 41,000 vehicles per day use the four-lane expressway at or near exit 7N. Peak hour traffic is approximately 18% of the total daily traffic. This equates to 2,000 vehicles per lane, per hour, during peak-hour periods which is the absolute maximum capacity of any traffic lane. He noted that traffic information indicated that roughly one-third of all west-bound traffic exits at 7N, and that the proposed sign would become visible only when a driver reached the Fire Road overpass. With regard to exit 7N, the exit ramp becomes visible a few hundred feet before the exit ramp itself. It was his opinion that reading an outdoor advertising sign would take from 1.5 seconds or longer, depending on the nature of the sign and other factors. He noted that once through the overpass, there were additional official signs and lane designations which would compete with the proposed outdoor advertising sign for the driver's attention. He presented the following opinion:
We are in a location of high workload during many times of the year. We are in an area where the driver has the responsibility to maintain positional control of his automobile and certainly react to the situation of the demands that are placed upon him. We have an area where judgments must be made very timely in order for the driver to perceive, to react to the official communications that are there and to other traffic, to make the 7 north maneuver in the westbound direction. We have a situation where there are good indications that there is erratic behavior indicating load shedding problems on the part of *213 drivers, occasions that drivers are missing, in effect, the same time that they should be responding to make that 7 north maneuver.
That, along with traffic volumes and speed of flow that we have and the traffic control that is necessary to let the interchanging movement take place, I believe there is inadequate time, free time available to the driving public to attend to extraneous information at a point in time, any extraneous information at that point in time, in my opinion, would be distractive, would cause, in some cases, improper driver responses, all of which are safety concerns for the profession.
Jerry Wachtel, a human factors psychologist, also testified on behalf of the Authority. Having extensive experience in engineering psychology as a former Federal Highway Administration employee, Wachtel stated that of a total of 41 accidents occurring within one mile of the proposed site between September 1983 and August 1985, 22 accidents, or 54% were directly related to the exit 7N interchange. Wachtel testified that accidents are caused by many factors and any attempt to find a cause and effect relationship between an accident and a single feature of a roadway is fruitless. However, he noted that recent studies revealed that outdoor advertising devices are correlated with driver distraction. He presented slides showing unsafe maneuvers by motorists utilizing exit 7N. He noted that interchanges, such as the expressway-Garden State Parkway interchange, are the least safe locations because they involve turning movements, acceleration and deceleration, and acts of indecision. It was his view that during periods of high traffic volume, presence of the proposed sign would cause "information processing overload" thereby distracting the drivers. He also was of the view that illuminating the sign at night would cause even greater distraction. It was Wachtel's opinion that the sign would endanger the interest of public safety and interfere with the safety of the traveling public.
Philadelphia produced two witnesses. Beth Heenen, a car counter, produced the results of her car counting on two occasions at the proposed site. Leslie Kaplan, the owner of Philadelphia, testified that he has been in the billboard business for 23 years and had never been sued on the basis of a billboard causing a motor vehicle accident. He also indicated that he was *214 not aware of anyone else in his industry ever having been sued on such a theory. Kaplan testified that high traffic counts are important to his business: the greater the circulation, the greater the revenues.
The ALJ accepted the factual evidence presented by the Authority's witnesses. For example, he found as a fact that "inappropriate vehicular maneuver[s]" by motorists using exit 7N "occur on a regular basis." However, the judge concluded that: (1) the Authority failed to show that the proposed sign would divert a driver's attention from the driving task; (2) the subject area was not "uniquely hazardous," and (3) the opinions of the Authority's experts were not "supported by any substantial evidence, and, therefore are accorded no weight." The ALJ therefore recommended issuance of the license. The Commissioner affirmed, concluding that the Authority failed to show that the proposed location would create such a unique set of circumstances that the traveling public would be endangered. In reaching that conclusion, the Commissioner found that the Authority failed to "... demonstrate a correlation between frequency or severity of accidents and the presence of outdoor advertising...."
We are satisfied that the conclusions reached by the ALJ and Commissioner are erroneous for two reasons. Firstly, both failed to apply the proper legal standard. Generally, we give appropriate deference to an interpretation of a statute by the agency responsible for enforcing it. See Mortg. Bankers Ass'n v. N.J. Real Estate Com'n., 102 N.J. 176, 188 (1986); Infocomp Corporation v. Somerset Trust Company, 165 N.J. Super. 382, 391 (App.Div. 1979). However, we are not bound by the agency's interpretation or its determination of a strictly legal issue. Fedders Financial Corp. v. Taxation Div. Dir., 96 N.J. 376, 392 (1984); Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 93 (1973). In keeping with its judicial duties, a court must override an agency's interpretation where it is clearly contrary to the plain meaning of the statute. Service Armament *215 Co. v. Hyland, 70 N.J. 550, 562 (1976). Further, "... an administrative interpretation which attempts to add to a statute something which is not there can furnish no sustenance to the enactment." Id. at 563.
N.J.S.A. 54:40-60(1) and (2) prohibit the issuance of a permit for an outdoor advertising sign where the erection of the sign would "... injuriously affect any public interest ..." or "... endanger the interest of public safety, health or morals[.]" Its attendant regulation provides that a permit to erect a sign will not be granted if "[i]t would injuriously affect any public interest" or endanger the interest of public safety by interfering with "the safety of the traveling public." N.J.A.C. 16:41A-3.2(a)2 and 3i.
Instead of applying the language of the statute and regulation, the ALJ and Commissioner erroneously applied a standard found in an earlier administrative decision, New Jersey Turnpike Authority v. Allied Outdoor Advertising, OAL Dkt No. TR-6053-83 which interpreted N.J.A.C. 16:41A-3.2 as requiring proof that placement of the proposed sign would "... create such a unique set of circumstances so as to create a hazard to the traveling public." [Emphasis supplied]. Neither the statute nor regulation speak of "a unique set of circumstances." Clearly, this standard imposes a heavier burden of proof upon an objector than that imposes by either the statute or regulation. Indeed, in affirming the Commissioner's grant of a permit in Allied, we declined to decide the appropriateness of such a standard, noting in our unpublished opinion that our silence on the subject should not be deemed an expression of opinion. (A-29-84T7 and A-238-84T7, decided August 21, 1986). Moreover, the Commissioner here went even further than the "unique set of circumstances" standard by requiring proof of "... a correlation between frequency ... of accidents and the presence of outdoor [billboards]." The statute and regulation make no reference to such correlation. In our view, if the Legislature intended to require such proof, it would have *216 so stated. We therefore conclude that the ALJ and Commissioner applied a legally incorrect standard.[1]
Secondly, we are satisfied that the Commissioner's decision is not supportable on the record before us. We recognize that our scope of review is narrowly circumscribed. We must decide whether the agency's finding could reasonably have been reached on sufficient credible evidence in the record, giving due regard to the fact-finders opportunity to judge the credibility of witnesses, and to the agency's expertise where expertise is pertinent. Mayflower Securities v. Bureau of Securities, supra, 64 N.J. at 92-93; Close v. Kordulak Bros., 44 N.J. 589, 599 (1965). Ordinarily, we will not reverse unless the administrative decision is arbitrary, capricious on unreasonable or is not supported by substantial credible evidence on the record as a whole. Barry v. Arrow Pontiac, Inc., 100 N.J. 57, 71 (1985); Riverside General v. N.J. Hosp. Rate Setting Com'n., 98 N.J. 458 (1985). We are not at liberty to substitute our judgment for that of the administrative agency, Dougherty v. Human Services Dep't., 91 N.J. 1, 6 (1982), and we must be mindful that a presumption of reasonableness attaches to the agency's action. Boyle v. Riti, 175 N.J. Super. 158, 166 (App.Div. 1980).
The Commissioner's findings here were not reasonably reached on sufficient credible evidence and her action in issuing the permit was, in our view, arbitrary, capricious and unreasonable. The Commissioner gave no weight to the Authority's experts who painstakingly described the high volume and dangerous quality of the traffic in the vicinity of the proposed site. *217 They noted numerous hazardous maneuvers made by motorists using exit 7N, the dangerous quality of the expressway-parkway interchange and the fact that a motorist's view of the exit ramp was obstructed until he passed under the Fire Road overpass. They also described existing traffic signs at or near the proposed billboard which will demand a motorist's attention. Both witnesses applied their respective expertise and concluded that the diversion of the billboard would exacerbate an already unsafe traffic condition. In our view, the experts' testimony was sound and fully supported by empirical data collected during their on-site inspections.
Further, we cannot understand why both the ALJ and Commissioner completely ignored the testimony of Robert Macai, the DOT's project engineer of maintenance. Macai had 30 years of experience in highway safety and testified as an independent, unbiased witness. He gave persuasive and uncontradicted testimony after site inspections regarding the hazards of the proposed site and how the billboard would interfere with the safety of the traveling public. Although the choice of accepting or rejecting testimony of witnesses ordinarily rests with the administrative agency, the choice must be reasonably made. See Renan Realty Corp. v. Community Affairs Dep't., 182 N.J. Super. 415, 421 (App.Div. 1981). We find no reasonable basis here for rejection of the thorough and persuasive testimony given by Macai, the DOT's own project engineer, particularly since no competent evidence was presented to refute his testimony.
We conclude that the Authority's substantial proofs met the requisite standards under N.J.S.A. 54:40-60 and N.J.A.C. 16:41A-3.2, requiring the rejection of the outdoor advertising permit. The Commissioner's order granting the outdoor advertising permit is therefore reversed.
Philadelphia argues, as it did before the ALJ, that the Outdoor Advertising Act, N.J.S.A. 54:40-50 et seq., is facially unconstitutional as violative of the First Amendment to the *218 federal constitution. As we understand the argument, Philadelphia contends the effect of the statute and regulations is that on-site noncommercial speech is prohibited, while on-site commercial speech is allowed, a defect which renders the statute and regulations facially invalid as interpreted by the plurality in Metromedia, Inc. v. San Diego, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981).
The short answer to Philadelphia's contention is that it has no standing to raise this point since the proposed billboard here involves off-site commercial speech, and thus is not affected by the purported facially invalid prohibition of noncommercial speech.
What is regulated here is off-site commercial speech. Commercial speech has traditionally been accorded less constitutional protection than other varieties of expression. Id. at 506, 101 S.Ct. at 2891. The United States Supreme Court in Central Hudson Gas v. Public Service Comm'n., 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), adopted a four-part test for determining the validity of government restrictions on commercial speech:
At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest. [447 U.S. at 566, 100 S.Ct. at 2351, 65 L.Ed.2d at 351].
Applying the four-prong test here, it is clear that the Outdoor Advertising Act and its regulations must be upheld as constitutional. The first prong is inapplicable since no one has suggested that billboard advertising is either unlawful or misleading. As to the second prong, the pertinent statute and regulation clearly advance a substantial governmental interest: traffic safety and aesthetics. See Metromedia, Inc. v. San Diego, supra, 453 U.S. 507-508, 101 S.Ct. 2892-93, 69 L.Ed.2d 815. Further, it is clear that they reach no further to accomplish *219 that governmental objective than necessary. An applicant is entitled to an off-site billboard permit unless the sign creates a traffic hazard or otherwise injures the public interest. The Legislature obviously desired to accommodate the economic and business interests of the applicant as well as to protect the interest of the traveling public. We therefore hold that statute and the regulation do not contravene the First Amendment right to free speech.
The decision of the Commissioner is reversed. We remand for the entry of an order denying Philadelphia's application for an outdoor advertising permit. We do not retain jurisdiction.
NOTES
[1] The Authority argued before the ALJ that Philadelphia should have the burden of proving that the billboard could be installed without violating the statutory or regulatory standards. The ALJ concluded that Philadelphia's initial burden "is very light ... basically all it requires is a declaration [that] there is no impact upon public safety." According to the ALJ, the burden then shifted to "... the opponents to show ... how ... there is negative impact upon public safety." While we have serious reservations respecting the ALJ's allocation of the burden upon the Authority, we need not address the issue since we reverse on other grounds.