LASSER, P.J.T.C.,
The New Jersey State Bar Association (“NJSBA”), a nonprofit association of attorneys licensed to practice law in New Jersey, challenges the constitutional validity of the Fair Automobile Insurance Reform Act of 1990 (“fair act,” or “the act”), A. 1990, c. 8, as it applies to attorneys, and seeks to bar its enforcement against them.
The Attorney General, on behalf of defendants, has moved for summary judgment, and NJSBA has filed a cross-motion for summary judgment.
The parties agree that there are no facts in issue. The sole legal issue is the validity under the United States and New Jersey Constitutions of § 67 of the fair act on its face and as applied.
The fair act is a comprehensive revision of various laws governing automobile insurance, in an effort to provide an *438 “equitable, efficient and economical” motor vehicle insurance system. The New Jersey automobile insurance system has been the subject of examination and reform by New Jersey state government for almost 20 years. The New Jersey Automobile Reparation Reform Act was enacted, effective June 20, 1972, which made automobile liability insurance coverage compulsory and provided for personal injury protection coverage regardless of fault in certain cases. N.J.S.A. 17:29A-33 et seq. Pursuant to authority delegated by N.J.S.A. 17:29D-1 et seq., the Commissioner of Insurance adopted the New Jersey Automobile Insurance Plan, N.J.A.C. 11:3-1.1 et seq., effective January 31, 1972, e.g., R. 1972 d. 20. This plan is commonly referred to as the assigned risk plan. In 1974, the Joint Underwriting Association Act was enacted. N.J.S.A. 17:30B-1. Effective January 1, 1983, the New Jersey Automobile Insurance Reform Act of 1982 replaced the assigned risk plan with the New Jersey Automobile Full Insurance Underwriting Association, commonly referred to as the JUA. N.J.S.A. 17:29A-33 and :30E-1 et seq.
Enacted on March 12,1990, the fair act seeks to remedy what the Legislature perceived as an automobile insurance crisis, which includes a JUA deficit of approximately $3.3 billion. This deficit resulted in the JUA’s inability to pay claims and expenses.
In addition to changes in the automobile insurance system, the fair act provides for funding the JUA deficit from a broad variety of revenue-raising sources. These funding sources together with the estimated amounts to be raised are:
1. assessments on property casualty insurers, 1990-1992 ($1.1 billion);
2. motor vehicle registration fees, 1990-1996 ($935 million);
3. merit rate plan surcharges, 1990-1997 ($880 million);
4. automobile premiums surtax, 1990-1992 ($300 million);
5. $100 fees on occupations and professions, 1990-1996 ($66.7 million);
6. JUA premium tax, 1990-1992 ($3 million);
Total, 1990-1997, $3.3 billion.
The section of the fair act that imposes a fee on attorneys is § 67, which provides:
*439 The State Treasurer shall assess an annual fee in the amount of $100, payable by each person licensed to practice law in this State who has engaged in the practice of law for at least one year. Fees imposed pursuant to this section shall be payable on or before July 1 of each calendar year from 1990 through 1996. Payments are to be remitted to the treasurer and credited to the New Jersey Automobile Insurance Guaranty Fund created by section 23 of this 1990 amendatory and supplementary act.
The fiscal estimate to Assembly Bill 1 (1990), enacted as the fair act, estimated that the $100 attorney fee would generate $27.7 million toward reduction of the $3.3 billion deficit.
Although denominated a “fee” in the fair act, the $100 attorney fee is conceded by the parties to be a tax.
NJSBA contends that § 67 violates the federal and New Jersey equal protection guaranties, encroaches on the exclusive jurisdiction of the New Jersey Supreme Court to regulate the practice of law, violates due process and constitutes invalid special legislation. NJSBA also contends that it may bring this action under 42 U.S.C.A. § 1983 of the Civil Rights Act.
Defendants deny any federal or New Jersey constitutional violation and contend that states and state officials sued in their official capacities are not “persons” who can be sued under 42 U.S.C.A. § 1983.
I.

Does § 67 Violate the Equal Protection Clause of the United States Constitution?

It is well established that equal protection guaranties are measured using a three-tier test, with the nature of the right or class at issue determining which tier is applicable. Where a fundamental right, or suspect class is at issue, a statute must satisfy the standard of strict scrutiny under which the statute will be found to be constitutional if the means chosen are necessary to promote a compelling governmental interest. When a semi-suspect class, such as gender, is involved, the classification must “ ‘serve important governmental objectives and must substantially relate to the achievement of those objectives.’ ” Greenberg v. Kimmelman, 99 N.J. 552, *440 565, 494 A.2d 294 (1985) (quoting Craig v. Boren, 429 U.S. 190, 197, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1976)). Where a fundamental right, or suspect or semi-suspect class is not at issue, a classification is constitutional if it is rationally related to a legitimate governmental objective. Regan v. Taxation With Representation, 461 U.S. 540, 547, 103 S.Ct. 1997, 2001, 76 L.Ed.2d 129 (1983); Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 461-466, 101 S.Ct. 715, 722-725, 66 L.Ed.2d 659 (1981); Vance v. Bradley, 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979); Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970).
NJSBA does not contend that a suspect or semi-suspect class is in issue, but contends that fundamental rights under the First Amendment have been violated. NJSBA contends that the lobbying efforts of various legal associations in connection with insurance reform legislation is one reason this tax has been imposed on attorneys. This argument is based in large part on defendants’ reference in their brief to these lobbying efforts. However, defendants’ reference to the lobbying efforts of legal organizations is relied upon by them only to establish the interest in and relationship of attorneys to the automobile insurance system. There is no evidence of intent on the part of the Legislature to impose this tax on these lobbying efforts, nor has a burden been imposed upon the content of speech, and since there is no First Amendment infringement, I find that a fundamental right is not implicated.
Since there is no fundamental right, or suspect or semi-suspect class at issue, the rational relation test is applicable. Under the rational relation test, “the Equal Protection Clause is offended only if the statute’s classification ‘rests on grounds wholly irrelevant to the achievement of the State’s objective.’ ” Kadrmas v. Dickinson Public Schools, 487 U.S. 450, 462, 108 S.Ct. 2481, 2489, 101 L.Ed.2d 399, 412 (1988) (quoting McGowan v. Maryland, 366 U.S. 420, 425, 81 S.Ct. 1101, 1104, 6 L.Ed.2d 393, 399 (1961)). Where social or economic legislation is at issue, “ ‘[w]e will not overturn such a statute unless the *441 varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature’s actions were irrational.’ ” Kadrmas, supra, 487 U.S. at 462-463, 108 S. Ct. at 2489-2490 (quoting Vance v. Bradley, supra, 440 U.S. at 97, 99 S.Ct. at 942).
Further, there is a strong presumption in favor of the constitutionality of statutes, and where taxation is at issue, a state legislature is accorded “the widest possible latitude within the limits of the Constitution.” Carmichael v. Southern Coal Co., 301 U.S. 495, 510, 57 S.Ct. 868, 872, 81 L.Ed. 1245 (1937). See also Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973); Madden v. Kentucky, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940).
The rational relation test requires the identification of three factors: (a) the governmental objective; (b) the class; and (c) a rational relation between the objective and the class.
A. The Governmental Objective.
In this case, the governmental objective of the fair act and, specifically, § 67 is apparent. The title to the fair act states:
AN ACT to reform the motor vehicle insurance system in this state, providing for the financial integrity of that system through the raising of certain revenues and the creation of certain funding mechanisms, providing a dedicated source of revenues to partially fund the operations of the Department of Insurance and revising parts of statutory law.
The relevant legislative findings and declarations of the act in § 2 are:
a. For almost two decades the system of motor vehicle insurance in this State has been the subject of examination, reform, review and revision in all three branches of government.
b. The common public purpose throughout this period has been to provide to the motorists of this State a comprehensive program of indemnification from the injuries and damages that may arise out of the ownership or operation of motor vehicles that is equitable, efficient and economical.
d. It has become increasingly obvious to the Legislature and the public that, as a result, one of the principal goals of this common purpose has not been attained: economy____
*442 f. As a result of this experience, the Legislature finds that it is necessary to address the myriad aspects and issues of this complicated and interrelated system, not through piecemeal adjustment of various statutory or regulatory provisions, but through a logical, comprehensive and complete revision of the various laws and regulatory schemes that impact, in whatever fashion, on the system and its participants.
The title, legislative findings and declarations of the act make clear that the governmental objective is reform of the motor vehicle insurance system and the establishment of means to fund this reform. It is apparent that this is a legitimate governmental objective, and there is no serious contention to the contrary.
B. The Class.
Identification of the class in issue is the second step. NJSBA argues that the subject class consists of those who benefited by providing “goods and services to those involved in motor vehicle accidents.” To support its contention, NJSBA relies on § 2c of the act, which states:
As various legislative or executive initiatives were taken in pursuit of this public purpose, the insurance industry itself, and the businesses and professions that provide goods and services to those involved in motor vehicle accidents, were at the same time altering the way in which they conducted their businesses to respond to a changing business and regulatory climate to ensure that they continued to benefit.
Section 2c indicates an awareness on the part of the Legislature that there exist certain businesses and professions which have an interest in the automobile insurance system as providers to those involved in motor vehicle accidents, but the plain language of § 2c does not create a single class to be taxed consisting of all those who benefit, nor does a reasonable interpretation of the language support a finding that this was an intention of the Legislature.
Further, an act may create more than one class. In Schweiker v. Wilson, 450 U.S. 221, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981), the statute at issue had created three classes of persons who were to receive the benefits. After first identifying the classes under the act, the Court then turned to the particular class in issue. The Court said that the “pertinent inquiry is whether the classification employed in [the section of the act *443 identifying the class] advances legitimate legislative goals.” Id. at 232, 101 S.Ct. at 1081.
In the subject case, the portions of the act which concern funding the JUA deficit select a broad variety of funding sources — insurance companies, motor vehicle owners, bad drivers, attorneys, physicians, podiatrists, chiropractors, physical therapists and auto body repair facilities. These funding sources are the classes. There is no single class consisting of all those who benefit from the automobile insurance system, as NJSBA contends.
The Division of Taxation in the Department of the Treasury (“the agency”) and the Attorney General’s Office determined that, in the administration of § 67, it could reasonably be inferred that the Legislature intended to look to R. 1:28-2, Clients’ Security Fund of the Bar of New Jersey (“CSF”), to determine who is within the attorney class and who is not. Letter of the Div. of Taxation dated July 25, 1990.
All attorneys licensed to practice law in New Jersey are required to pay the annual CSF fee, with the exception of those in the following CSF exempt categories:[1]
(1) newly-admitted attorneys during the calendar year in which they obtain full plenary admission and for the next succeeding calendar year;
(2) attorneys who have been in public or private practice in New Jersey for 50 years or more;
(3) attorneys on full-time active duty with the armed forces, VISTA or Peace Corps, and not engaging in any way in private practice;
(4) attorneys retired completely from the practice of law.
The agency has concluded that attorneys in the foregoing exempt categories are not included in the fair act attorney class. In addition, the agency and the Attorney General’s office have determined that full-time judges, who are barred *444 from the practice of law by the New Jersey Constitution, by statute and by R. l:151(a) are not included in the attorney class.
“Generally, we do give substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing.” Smith v. Director, Div. of Taxation, 108 N.J. 19, 25, 527 A.2d 843 (1987). Further, an Attorney General’s opinion is entitled to weight with regard to interpretation. Peper v. Princeton University Board of Trustees, 77 N.J. 55, 70, 389 A.2d 465 (1978). However, although generally a reviewing court gives appropriate deference to an interpretation of a statute by the agency responsible for enforcing it, in keeping with its judicial duties it “must override an agency’s interpretation where it is clearly contrary to the plain meaning of the statute.” Philadelphia Outdoor v. New Jersey Expressway Auth., 221 N.J.Super. 207, 214, 534 A.2d 77 (App.Div. 1987), app. dism. 114 N.J. 470, 555 A.2d 598 (1989).
Section 67 clearly sets forth the definition of the attorney class as “each person licensed to practice law in this State who has engaged in the practice of law for at least one year.” Section 2h also relates to the composition of the class. Section 2h states:
[T]he Legislature declares that it is in the public interest to: ... (4) provide, through ... temporary assessments for the privilege of practicing certain professions and occupations ... for the funding of the debts and obligations [of the JUA],
Sources of legislative intent include the language of a statute, the policy behind a statute, concepts of reasonableness and legislative histories. Shapiro v. Essex Cty. Freeholders Bd., 177 N.J.Super. 87, 93, 424 A.2d 1203 (Law Div.1980), aff’d 183 N.J.Super. 24, 443 A.2d 219 (App.Div.), aff’d 91 N.J. 430, 453 A.2d 158 (1982). The phrases “privilege of practicing certain professions” in § 2h and “each person licensed to practice law in this State” in § 67, taken together, indicate a legislative intent that the § 67 tax should be paid by all persons holding active licenses who have the privilege of pursuing legal or judicial professions in New Jersey. Neither party has offered legislative history or evidence of an underlying policy *445 which supports a contrary reading, and this construction of the statutory language is reasonable. Those who are on the CSF inactive list[2] because they are retired from practice[3] or because they are on full-time active duty with the armed forces, VISTA or Peace Corps, or are on the CSF ineligible list do not have the privilege of pursuing legal or judicial professions in New Jersey and are not intended by the Legislature to be subject to the tax.
I disagree with the conclusion of the agency that it may be inferred that the Legislature intended to adopt the CSF delineations of those included in, and excluded from, the class. Section 67 contains no reference to the CSF. The CSF exempts some licensed New Jersey attorneys who are not expressly exempted by § 67. The express wording of the fair act does not support the finding of an implied reference to the CSF and indicates no intention to grant the agency authority to extend the exclusions beyond those in the act.
I find that the class includes all attorneys licensed to practice law in New Jersey whose licenses are active and who have the privilege of pursuing legal or judicial professions. The class does not include:
a. those who have not practiced law for at least one year;
b. holders of inactive licenses (those completely retired from the practice of law and those on full-time active duty with the armed forces, VISTA or Peace Corps); and
c. those ineligible to practice law in New Jersey for failure to pay the CSF fee.
I find specifically that as to CSF exempt categories 1 and 2, those who have practiced law in New Jersey for at least one year and those who have practiced law in New Jersey for 50 years or more are included in the attorney class because their licenses are active and they have the privilege of pursuing a *446 legal profession. I find specifically that judges, who hold active licenses which enable them to exercise the privilege of pursuing the judicial profession in New Jersey, are members of the class. Judges are not within any of the above three categories not included in the class, and there is no express exemption for judges in the statute.
As a matter of administrative convenience, attorneys on the CSF active list (including judges and full-time government attorneys but excepting those who have not practiced law for at least one year) are included in the class, and those listed as inactive or ineligible are not included in the class.
NJSBA’s challenges to the nature and composition of the class are rejected except with respect to its argument that the class is underinclusive. To the extent that my finding of the composition of the class is inconsistent with the agency determination of those who are included in the class, the agency determination of the class is held to be at variance with the clear wording and intent of the statute and, therefore, invalid.
C. A Rational Relation Between The Class and The Objective.
The third step requires a determination of whether there is a rational relation between the objective (funding of the JUA deficit) and the attorney class. Where a legislative classification is challenged on equal protection grounds, “[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.” Regan v. Taxation With Representation, supra, 461 U.S. at 547, 103 S. Ct. at 2002. Classifications will be held invalid “only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes.” Ibid, (citation omitted).
Defendants contend that several conceivable bases support the classification and may be considered by the court. These include the fact that attorneys provide legal services to those involved in motor vehicle accidents; substantial fees were paid *447 by the JUA to attorneys; automobile accident litigation increased during the existence of the JUA; attorneys can afford to pay the tax; and the lobbying efforts of various attorney associations evidence the stake that attorneys have in the automobile insurance system.
NJSBA contends that there is no rational relation between attorneys as a class and the objective of the act. They argue that one reason the Legislature selected attorneys as a class was to punish them. As stated earlier, defendants’ reference to attorney lobbying efforts was made by them simply to evidence the interest that attorneys have in the automobile insurance system. There is no evidence that the Legislature intended to punish attorneys for their lobbying efforts.
NJSBA contends that § 67 is overinclusive because not all attorneys benefit from the automobile insurance system. The fact that some members of the burdened class do not benefit from the system is not sufficient to render the classification arbitrary. “[I]f the classification has some reasonable basis, it does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality ... The problems of government are practical ones and may justify, if they do not require, rough accommodations....” Dandridge v. Williams, supra, 397 U.S. at 485, 90 S.Ct. at 1161. While some attorneys directly participate in the automobile insurance system, others may benefit indirectly through financial interdependence or a general increase in the need for attorneys, particularly litigators.
NJSBA contends that § 67 is invalid as applied on the ground that the class, as interpreted by the agency, is overinclusive because it includes those who do not practice law in New Jersey and those who are not in the private practice of law in New Jersey. It argues that residents and nonresidents who are licensed to practice law in New Jersey but who do not maintain a bona fide office in the State are not engaged in the practice of law in New Jersey and, therefore, are erroneously included in the class, and that full-time government attorneys may not *448 engage in private practice and, therefore, they also are erroneously included in the class.
Resident and nonresident attorneys who are not practicing law in New Jersey or any other jurisdiction may apply for and be granted CSF inactive status by certifying to CSF that they do not engage in the practice of law in any jurisdiction. If they are not practicing law in New Jersey but are practicing in another jurisdiction and fail to pay the CSF fee, they are placed on ineligible status (ineligible to practice law in New Jersey). I have held that it is the legislative intent that attorneys who have inactive or ineligible CSF status are not subject to the § 67 tax. Attorneys who do not have inactive or ineligible CSF status can be presumed either to be actively practicing law in New Jersey or desirous of maintaining an active license to practice law in this state, together with the benefits conferred.
NJSBA argues that full-time government attorneys are not excluded from the class even though they are barred from the private practice of law. The language of the act does not limit practice to the private practice of law. Full-time government attorneys can practice law, represent their governmental agencies and appear before state and federal courts. Their licenses are active and they retain the privilege of pursuing legal or judicial professions.
NJSBA contends that the class is underinclusive because attorneys have been singled out from the host of professions and occupations which benefit from the automobile insurance system but are not subject to this tax. However, the United States Supreme Court “has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption infringe no constitutional limitation.” Carmichael v. Southern Coal Co., supra, 301 U.S. at 509, 57 S.Ct. at 872. The Legislature “may impose different specific taxes upon different trades and professions....” Allied Stores of Ohio, Inc. v. Bowers, 358 U.S. 522, 527, 79 S.Ct. 437, 4, 3 L.Ed.2d 480 (1959). “[Mjere underinclusiveness is not fatal to the validity of a law under ... equal protection ... even if *449 the law disadvantages an individual or identifiable members of a group.” Nixon v. Administrator of General Services, 433 US. 425, 471, n. 33, 97 S.Ct. 2777, 2804, n. 33, 53 L.Ed.2d 867 (1977) (citations omitted). “[A state legislature] cannot record a complete catalog of the considerations which move its members to enact laws. In the absence of such a record courts cannot assume that its action is capricious....” Lehnhausen, supra, 410 U.S. at 364, 93 S.Ct. at 1006 (citations omitted).
I have found that the Legislature has selected certain classes, which derive benefit from the automobile insurance system, and that there is no evidence of an intent that there be a single class made up of all who benefit. This legislative determination may have been prompted by administrative convenience, the ability of members of the class to pay or the degree of benefit. Hospitals, for instance, may have been excluded on the basis of ability to pay. Dentists may have been excluded because of a perceived low degree of benefit. The Legislature may well have been of the opinion that attorneys as a class benefit more from the automobile insurance system than do excluded groups.
NJSBA argues that § 67 is underinclusive because not all persons licensed to practice law are included. I have found that the exclusion of attorneys on the CSF inactive and ineligible lists from the class is a reasonable interpretation of the legislative intent as to the makeup of the attorney class. I also find that there is a rational basis for excluding attorneys who have practiced law for less than one year, based on ability to pay or low degree of benefit.
NJSBA has not met its substantial burden of showing that the classification is wholly irrelevant or unrelated to the achievement of the objective, that the classification is an explicit demonstration of hostile and oppressive discrimination, and has not negated every conceivable basis which may support the classification. Therefore, I find that § 67, both facially and as applied, does not violate federal equal protection guaranties.
*450 II.

Does § 67 Violate Equal Protection Under the New Jersey Constitution?

Although not specifically set out in the New Jersey Constitution, “[e]qual protection is implicitly guaranteed by our State Constitution.” N.J. Const.(1947) Art. I, par. 1; Levine v. Institutions and Agencies Dept, of N.J., 84 N.J. 234, 257, 418 A.2d 229 (1980). Equal protection claims brought under the New Jersey Constitution are analyzed using a “balancing test,” which considers “the nature of the affected right, the extent to which the governmental restriction intrudes upon it, and the public need for the restriction.” Greenberg v. Kimmelman, supra, 99 N.J. at 567, 494 A.2d 294. However, “[t]o a large extent, those considerations [under the balancing test] are implicit, if not explicit, in federal analysis of the due process and equal protection clauses.” Ibid.
NJSBA argues that attorneys have been singled out by the fair act for unequal treatment. This argument is based on the contention that the class is all who benefit and, thus, attorneys have been singled out because not all who benefit are subject to the tax. I have found that the class is the attorney class as defined in part I, that there is no one class comprised of all who benefit, that the Legislature’s determination of the makeup of the attorney class is reasonable and that this class is rationally related to the statutory objective. Therefore, I find no violation of equal protection under the New Jersey Constitution.
III.

Does § 67 Violate The Protection Against Special Legislation Under the New Jersey Constitution?

NJSBA contends that § 67 constitutes prohibited special legislation under the New Jersey Constitution. N.J. Const.(1947), Art. IV, § 7, par. 9(6).
*451 “The Legislature is necessarily accorded a broad discretion in the area of permissible classification. Within the range of this discretion, the Legislature may enact a statute as a general law which operates ‘equally upon all of a group of objects which, having regard to the purposes of the Legislature, are distinguished by characteristics sufficiently marked and important to make them a class by themselves.’ ” In re Freygang, 46 N.J.Super. 14, 23, 133 A.2d 672 (App.Div.1957), aff’d 25 N.J. 357, 136 A.2d 625 (1957) (citations omitted). “A law is special in a constitutional sense when, by force of an inherent limitation, it arbitrarily separates some persons, places or things from others upon which, but for such limitation, it would operate.” Id. at 23, 133 A.2d 672; emphasis supplied (quoting Budd v. Hancock, 66 NJ.L. 133, 48 A. 1023 (1901)). The test to determine whether a law is special or general is similar to the test for an equal protection violation. Newark Superior Officers Association v. City of Newark, 98 N.J. 212, 223, 486 A.2d 305 (1985). In distinguishing between general and special laws, the Legislature is accorded broad discretion. Alfred Vail Mut. Assoc, v. Bor. of New Shrewsbury, 58 N.J. 40, 48, 274 A.2d 801 (1971). Any conceivable reason for justifying the classification will sustain a law as a general law. Newark Superior Officers Association v. City of Newark, supra 98 N.J. at 227, 486 A.2d 305.
“A statute is presumed to be constitutional and will not be declared void [as special legislation] unless it is clearly repugnant to the Constitution ... [and] [t]he burden is on the party challenging the constitutionality of the statute to demonstrate clearly that it violates a constitutional provision”. Id. at 222, 486 A.2d 305 (citations omitted).
At the heart of NJSBA’s argument is its contention that: (a) the basis for the classification is benefit from the automobile insurance system, (b) the Legislature intended to create one class comprised of all those who so benefit, and (c) inclusion of attorneys and exclusion of others who so benefit represents an arbitrary distinction among similarly-situated persons. However, I have found in part I of this opinion that the Legislature *452 did not create one class consisting of all those who benefit from the automobile insurance system, and for the purpose of analyzing the special legislation claim, I find that no such class exists. The class at issue is attorneys as defined in part I, and there has been no arbitrary distinction among similarly-situated persons. This classification is within the discretion accorded the Legislature, and I find that NJSBA has not met its burden of rebutting the presumption of constitutionality of legislative enactments on special legislation grounds.
IV.

Does § 67 Violate Due Process Under The Federal and New Jersey Constitutions?

NJSBA makes three arguments to support its contention that due process has been violated: (1) it is unreasonable to tax New Jersey-licensed attorneys who are not practicing law in New Jersey, whether residents or nonresidents, or government attorneys not permitted to engage in private practice; (2) § 67 is impermissibly vague; and (3) the fair act lacks a refund provision.
Substantive due process guaranties require a determination of whether the legislative purpose and the means employed to achieve such purpose are constitutionally permissible. “The legislation must bear a rational relationship to a constitutionally permissible objective.” U.S.A. Chamber of Commerce v. State, 89 N.J. 131, 155, 445 A.2d 353 (1982). “Due process requires ‘only that a law shall not be unreasonable, arbitrary or capricious, and that the means selected shall bear a rational relation to the legislative object sought to be obtained.’ ” Piscataway Tp. Bd. of Educ. v. Caffiero, 86 N.J. 308, 318, 431 A.2d 799 (1981) (quoting Robson v. Rodriguez, 26 N.J. 517, 522, 141 A.2d 1 (1958)).
Substantive due process analysis is very similar to *453 equal protection analysis,[4] and in this case, the equal protection rational relation conclusions also govern the substantive due process argument concerning those who hold active licenses and have the privilege of pursuing legal or judicial professions in New Jersey.
As to those attorneys who are not engaging in the practice of law, resident and nonresident attorneys who are not practicing law in New Jersey or any other jurisdiction may apply for and be granted CSF inactive status by certifying to CSF that they do not engage in the practice of law in any jurisdiction. If they are not practicing law in New Jersey but are practicing in another jurisdiction and fail to pay the CSF fee, they are placed on ineligible status (ineligible to practice law in New Jersey). I have held that it is the legislative intent that attorneys who have inactive or ineligible CSF status are not subject to the § 67 tax.
Attorneys who do not have inactive or ineligible CSF status can be presumed either to be actively practicing law in New Jersey or desirous of maintaining the benefits of an active license to practice law in this state. I find that this constitutes a sufficient nexus to subject holders of active licenses to the § 67 tax. Where a tax is challenged under the Due Process Clause, “the sole constitutional test ... is whether property was taken without due process of law, or ... whether the taxing power asserted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return.” Wisconsin v. J.C. Penney Co., 311 US. 435, 444, 61 S.Ct. 246, 250, 85 L.Ed. 267, 270-271 (1940). In this case, I find that, as to those who hold an active license, the grant of a license to practice law in New Jersey meets the protection, opportunities and benefits test of the J.C. Penney decision.
*454 The fair act does not limit the class to those who engage in the private practice of law. Full-time government attorneys who cannot engage in the private practice of law may nevertheless practice law, represent their governmental agencies and appear before state and federal courts. They maintain active licenses and retain the privilege of pursuing legal or judicial professions, and therefore due process rights are not violated facially or as applied.
NJSBA contends that the definition of the class under § 67 is impermissibly vague because it does not establish adequate standards to determine the composition of the class. In support of this claim, it cites the approach taken by the State in identifying those included in and excluded from the class, which NJSBA describes as ad hoc.
I have previously rejected the agency’s conclusions as to the composition of the class. I find the standard for determination of the class to be the express and clear words of the statute, specifically, those who hold active licenses to practice law in New Jersey which enable them to exercise the privilege of pursuing legal or judicial professions and who have engaged in the practice of law for at least one year, and that this constitutes an adequate standard for determination of the class.
NJSBA argues that § 67 is impermissibly vague because it does not include a penalty for failure to pay the tax. This argument is not a sufficient basis to support a due process challenge for vagueness. The void-for-vagueness doctrine requires a statute to define the required acts “with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.” Kolender v. Lawson, 461 US. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). The focus of the analysis is on the definition of the required or prohibited act. Here, the required act is clear. Payment of a $100 tax by members of the attorney class is the required act. The absence of a penalty does not detract from the clarity of the required act.
*455 Lastly, NJSBA contends that the lack of a refund provision violates due process. Since I find that the statute does not otherwise violate the Constitution, there is no need to reach this issue.[5]
Based on the foregoing, I find that the § 67 taxation of attorneys whom I have found in part I to be properly included in the attorney class does not violate due process guaranties.
V.

Does § 67 Violate Separation of Powers Under the New Jersey Constitution?

Article VI, § 2, para. 3 of the New Jersey Constitution grants the Supreme Court broad and exclusive jurisdiction to govern the courts and Bar of this state. This provision has been interpreted as granting the Court exclusive jurisdiction to regulate all aspects of the practice of law in New Jersey. See In re LiVolsi, 85 N.J. 576, 583, 428 A.2d 1268 (1981); American Trial Lawyers Ass’n v. New Jersey Supreme Court, 66 N.J. 258, 262-263, 330 A.2d 350 (1974); State v. Rush, 46 N.J. 399, 411-412, 217 A.2d 441 (1966).
NJSBA views § 67 as an attempt by the Legislature to regulate the practice of law in New Jersey. Defendants contend that § 67 is solely the exercise of the legislative power to raise revenue.
The § 67 tax on those who have the privilege of pursuing legal or judicial professions is not regulation of the practice of law. Section 67 does not make the practice of law conditional upon payment of the tax, does not regulate attorneys’ fees and does not regulate any other aspect of the practice of law in New Jersey. The purpose of § 67 is to generate funds which, *456 together with funds obtained from taxes on other classes, are to be used to defray the financial obligations of the JUA.
There is substantial authority in other states which distinguishes the legislative power to impose an occupational tax on attorneys from the Supreme Court’s power to regulate the practice of law. See Russo v. City of Tucson, 20 Ariz.App. 401, 513 P.2d 690 (1973); Lister v. City of Fort Smith, 199 Ark. 492, 134 S.W.2d 535 (1939); People v. Williams, 207 Cal.App.2d Supp. 912, 24 Cal.Rptr. 922 (1962); Lublin v. Brown, 168 Conn. 212, 216, 362 A.2d 769 (1975); Sandstrom v. City of Fort Lauderdale, 133 So.2d 755 (Fla.Ct.App.1961); Mire v. City of Lake Charles, 540 So. 2d 950 (La.1989); Sterling v. City of Philadelphia, 378 Pa. 538, 106 A.2d 793 (1954); Davis v. Ogden City, 117 Utah 315, 215 P.2d 616, 622-623 (1950); City of Seattle v. Campbell, 27 Wash.App. 37, 611 P.2d 1347 (1980).
These cases generally stand for the proposition that a license to practice law does not grant immunity from taxation as long as the taxing statute is limited to revenue raising and is not regulatory in nature.
I find that imposition of this tax on attorneys is limited to the raising of revenue. Section 67 is not regulatory on its face or as applied and thus does not encroach on the power of the New Jersey Supreme Court to regulate the practice of law.
In view of my finding that § 67 is constitutionally valid, I need not reach the 42 U.S.C.A. § 1983 issue.
Defendants’ motion for summary judgment is granted except to the extent that the agency interpretation of the class is held to be inconsistent with the clear wording of the statute, and plaintiff’s cross-motion for summary judgment is denied.

 CSF lists license holders as active, inactive or ineligible. Attorneys in categories (1) and (2) are included in the list of active attorneys, while those in categories (3) and (4) are listed as inactive. The names of attorneys who do not come within the four exempt categories, but fail to pay the annual Clients’ Security Fund fee are placed on the CSF list of attorneys deemed ineligible to practice law in New Jersey by order of the Supreme Court. All other license holders are listed as active.

 Section 2.3 of the CSF rules and regulations indicates that those on the inactive list do not have the privilege of pursuing legal or judicial professions in New Jersey.

 I note that § 63, dealing with the tax on physicians, specifically exempts retired physicians.

 Holman v. Hilton, 542 F.Supp. 913 (D.C.N.J.1982), aff'd 712 F.2d 854 (3 Cir.1983).

 Defendants have stated that, in their opinion, the Uniform State Tax Procedure Act, which contains a refund provision, does not apply to this tax. However, because this tax is a state tax (and although no mention of the Uniform State Tax Procedure Act is made in the fair act) the uniform act and its refund provision could arguably apply.